[No. 12943.   Department One.   April 4, 1916.]

JESSE E. DAVIS *et al.*, *Respondents*, v. THOMAS BURKE, *Appellant.*[1]

CARRIERS—CARRIAGE OF PASSENGERS—DEGREE OF CARE. The operator of an elevator being a common carrier of passengers, must exercise the "highest degree of care compatible with practical operation."

SAME—CARRIAGE OF PASSENGERS—ELEVATORS—NEGLIGENCE — INVITATION TO ENTER. Where an elevator door was open and the elevator boy was at his post when a passenger started to enter, there was an invitation to enter, and it was negligence to close the door or start the car before closing the door while the passenger was entering.

SAME—PASSENGER ELEVATORS—NEGLIGENCE—EVIDENCE — QUESTION FOR JURY. Where there was evidence that an elevator boy started to close the door and start an elevator while a passenger was entering, and at the trial contradicted statements made in writing at the time of the trial, negligence in the operation of the elevator is a question for the jury.

SAME—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS. Where an elevator was standing at the floor where plaintiff attempted to enter and the door was open, and the elevator boy was at his post, it is proper to instruct to the effect that an intending passenger may assume that he may safely enter without stopping to look, listen or make a special examination.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $5,000, for personal injuries sustained in an elevator accident by a man 38 years of age earning $125 to $200 per month, is not excessive where he received a fracture of the anterior inferior spine of the ilium, a part of the hip bone, of the descending ramus of the pelvis and partial separation of the sacro-iliac joint, and suffered great pain, his injuries were more or less permanent, and he was unable to pursue his former occupation.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered January 30, 1915, upon the verdict of a jury rendered in favor of the plaintiffs, for personal injuries sustained in an elevator accident.   Affirmed.

[1]Reported in 156 Pac. 525.

*Hughes, McMicken, Dovell & Ramsey* and *Alex Dickinson,* for appellant.

*John W. Roberts* and *George L. Spirk,* for respondents.

MOUNT, J.—The plaintiffs recovered a judgment for five thousand dollars against the defendant on account of personal injuries received by the plaintiff Jesse E. Davis as the result of an elevator accident in the Empire building, an office building in Seattle owned by the defendant. The defendant has appealed from that judgment.

The appellant relies upon four alleged errors which we shall briefly notice in their order. At the close of the plaintiffs' testimony, the court denied a motion for a directed verdict; and after verdict, denied a motion for judgment notwithstanding the verdict. These rulings of the court are alleged as errors. They involve the same question, and that is whether there was sufficient evidence to go to the jury upon the question of the defendant's negligence.

The facts, as testified to by the plaintiffs, are, in substance, as follows: The respondent Jesse E. Davis was occupying an office on the tenth floor of the Empire building on March 21, 1914. There were three elevators in the building. These elevators are located about the middle of the building, on the north side thereof, and faced south upon a hallway which extends east and west through the building.

At about two o'clock in the afternoon of that day, Mr. Davis left his office, intending to take one of the elevators to the street floor. As he came into the principal hallway leading past the elevators, he saw a light burning over the center elevator. This light indicated that the elevator car would stop on its downward trip at that floor. He also discovered at the same time some people a few feet beyond the further elevator. Mr. Davis approached the middle elevator for the purpose of boarding the car. When he came up to the elevator, the door was open, and as he attempted to

step inside, the elevator started as he put his foot upon the floor of the elevator, and he was caught between the top of the door of the elevator and the floor of the corridor, with part of his body in the elevator and part in the corridor; so that when the elevator came down, it caught him on his right side, and crushed him down, and thereby inflicted severe injuries upon him.

When Mr. Davis realized his danger, he shouted to the elevator boy to stop. The latter immediately reversed the lever, bringing the elevator back to the floor of the corridor. Mr. Davis was released upon the threshhold of the elevator door.

Upon cross-examination, Mr. Davis testified, in part, as follows:

"Q. Your statement is that the elevator was at a standstill as you stepped into it; is that correct? A. I believe I stated that I was not positive that the elevator had not started as my foot touched the floor. Q. Well, when you stepped into it, had it started? A. Not to my knowledge. Q. Well, didn't you know? You could see if it were moving? A. It is not as light in there as it might be, and one cannot always tell those things. Q. Oh, well, there was a boy in the elevator, and if the elevator was moving, the boy would have been moving with it? A. Yes, and no such condition existed as indicating the elevator was moving so as to be perceptible. Q. Then to the best of your knowledge the elevator was standing still as you stepped in? A. Yes, sir."

Mr. Davis, on direct examination, testified as follows:

"Q. So far as you know had it (the door) started to close at the time you started to enter the elevator? A. I don't know whether it started before I put my foot on the floor, or whether at exactly the same time."

The boy who was operating the elevator testified, in substance, that he did not see Mr. Davis as he was about to enter the car; that, when the elevator came to a stop on that floor, he looked into the corridor and saw a woman just passing down the stairway at the left, and there was nobody in sight,

and he started to shut the door; that, while the door was clos-
ing, he started the elevator down; that there was nobody in
front of the elevator car when he started to close the door.
He also testified that he was looking to his left before he
started the elevator.

In *Atkeson v. Jackson's Estate,* 72 Wash. 233, 130 Pac.
102, 44 L. R. A. (N. S.) 349, we said:

"It must be remembered that in this state the operator of
an elevator is a common carrier of passengers, and is held
to the degree of care imposed upon common carriers gener-
ally; they must exercise with reference to the elevators under
their charge the 'highest degree of care compatible with their
practical operation.'"

See, also, *Perrault v. Emporium Department Store Co.,* 71
Wash. 523, 128 Pac. 1049; *Edwards v. Burke,* 36 Wash.
107, 78 Pac. 610.

In *Ferrell v. Washington Water Power Co.,* 83 Wash. 319,
145 Pac. 442, we said:

"If we admit that there was no such lurch or jerk as to
warrant a recovery, the fact remains that the accident would
not have happened if the door had not been opened while the
car was in motion. This conclusion is well within the doctrine
of *Perrault v. Emporium Department Store Co.,* 71 Wash.
523, 128 Pac. 1049. In that case the elevator had landed
about four or five inches below the level of the floor. Plaintiff
entered without looking, and fell. Contributory negligence
was set up as a defense. The court said: 'The open door,
with the elevator boy at his post, was an invitation to enter.'"

The same was true in this case. If the plaintiffs' testi-
mony was correct—that the door was open and the elevator
boy was at his post when Mr. Davis started to enter, it was
clearly the duty of the boy not to close the door until he had
looked to see that no one was about to enter. And it was also
his duty not to start the elevator, under the circumstances,
until the door was closed. So far as the record shows, no
other person was attempting to board the elevator at the
time Mr. Davis attempted to enter. It was plainly negli-

gence for the elevator boy to close the door upon a person entering the elevator.

It is argued by the appellant that the elevator boy, for some unexplained reason, contradicted the statements which he had made in writing soon after the accident. Whether his statments made at that time, or at the trial of the case, were correct, was a question for the jury. We are satisfied from a reading of all the evidence that the court did not err in refusing to decide, as a matter of law, that no negligence had been proven; and, for the same reason, did not err in refusing to enter a judgment notwithstanding the verdict.

Upon the trial of the case, the court instructed the jury as follows:

"You are instructed that an elevator for the carriage of persons is not supposed to be a place of danger like a railroad crossing at a highway, which should be approached with great caution; but, on the contrary, when the door is thrown open by the attendant, and the attendant is at his post, it may be assumed by one intending to become a passenger, that it is a place which may be safely entered without stopping to look, listen, or make a special examination."

It is conceded that this instruction is supported by *Perrault v. Emporium Department Store Co.*, and by *Ferrell v. Washington Water Power Co., supra;* but an argument is made that the instruction is not applicable to this case by reason of the fact that, when Mr. Davis saw the red light, which indicated that the elevator was approaching the tenth floor, it was his duty to examine and see what conditions were before attempting to enter the elevator. It is probably correct to say that it is the duty of one about to enter an elevator, or waiting for an elevator, to wait until the door is opened before attempting to enter, and not to attempt to enter the elevator when he knows the door is being closed. But those facts do not appear in this case. The evidence of Mr. Davis was that the elevator was standing at the floor when he attempted to enter; that the door was open.

And that was as much of an examination as he was required to make. We think it was not error to give the instruction, and that it properly stated the law upon the question.

It is next argued that the court erred in refusing to grant a new trial because of an excessive verdict. According to Mr. Davis' testimony, at the time of his injury he was thirty-eight years of age, had a position which guaranteed him $125 per month, and that he had made as much as $200 per month. At the time of the trial, he was earning $115 per month as a bookkeeper. He was unable to pursue his former occupation. The evidence shows, also, that he was seriously injured at the time of the accident. The testimony showed that Mr. Davis received a fracture of the anterior inferior spine of the ilium, a part of the hip bone, and also a fracture of the descending ramus of the left side of the pelvis, together with a partial separation of the sacro-iliac joint. The muscles of his foot, leg, and back were severely injured. Some of the physicians testified that, as a result of the injury, Mr. Davis had suffered great pain, and that the injury would be more or less permanent. Other physicians testified that he would probably recover in time. But there cannot be any doubt that, whether he recovers or not, his suffering was intense for a considerable time and that the injuries will more or less continue. The trial court saw the condition of Mr. Davis at the time of the trial and heard the evidence of the doctors as to the character and extent of the injury and declined to interfere with the verdict. We are not convinced upon the record that the judgment is excessive. We are, therefore, of the opinion that a new trial was properly denied.

We find no error in the record, and the judgment must be affirmed.

MORRIS, C. J., FULLERTON, CHADWICK, and ELLIS, JJ., concur.