[No. 15587.    Department One.    March 3, 1920.]

## H. W. GETTY et al., Respondents, v. L. W. HUTTON, Appellant.[1]

CARRIERS (77-3)—NEGLIGENCE—ELEVATORS. The highest degree of care compatible with the practical operation of a passenger elevator in an office building does not require the installation of a safety device preventing the moving of the elevator while the doors are open, where there was no evidence that such devices were commonly used in that class of buildings and the only testimony on the subject negatives its practicability; and in such a case it is error to submit the question to the jury.

WITNESSES (11)—COMPETENCY—AGE AND MATURITY OF MIND—DISCRETION. Whether a child six years of age was competent as a witness rests in the discretion of the court, and it is therefore not error to so instruct, and withdraw the subject from the consideration of the jury.

APPEAL (443)—REVIEW—HARMLESS ERROR—FAVORABLE TO APPELLANT. Error in not permitting a child to testify for the respondent is error favorable to the appellant.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered June 7, 1919, upon the verdict of a jury rendered in favor of the plaintiffs, in a parent's action for personal injuries sustained by a minor child in an elevator accident. Reversed.

*McCarthy & Edge* and *George D. Lantz,* for appellant.

*Post, Russell & Higgins,* for respondents.

MACKINTOSH, J.—The appellant owns an office building in the city of Spokane wherein is located a passenger elevator in which the six-year old child of the respondents received an injury, for which the respondents brought this action to recover for the loss of the child's services during her minority, and for the expense which they had incurred in caring for her as a

[1]Reported in 188 Pac. 10.

result of her injuries. The trial resulted in a verdict favorable for the respondents, and this appeal was brought by appellant, relying upon two assignments of error; first, relating to the instruction given by the court in regard to the absence of safety devices from the elevator, and, second, because of the following instruction:

"The law presumes that a child of the age of Virginia Getty is incapable of giving testimony in a law suit. Whether she shall or shall not be permitted to testify is a matter in the discretion of the court. The fact that she has not testified in this case is therefore not a matter of comment or consideration by you."

The negligence charged against appellant was, first, that the elevator was not equipped with a safety device which would make it impossible to move the elevator while the door remained open; second, the elevator operator was negligent in starting the elevator suddenly when the door was open; third, that the controller handle was weak and out of repair. Upon the second and third grounds of negligence, evidence was introduced which was sufficient to carry the case to the jury upon those points. Upon the first ground of negligence, it is contended by the appellant that there was not competent evidence rendering that phase of the case submissible to the jury.

The testimony shows that, in the city of Spokane, at the time of the accident, there were in operation some one hundred and sixty-five passenger elevators, and that upon none of them, without regard to the class of building in which they were located, was there installed any such safety device as the respondents claim should have been in use upon the elevator in question. The testimony shows, further, that there are safety devices which will prevent the moving of an elevator while the doors are open, but that such devices

are impracticable in the operation of passenger elevators in office buildings. The testimony also shows that such a device was at one time used on the passenger elevators in the Spokane & Eastern Trust Company's office building, but that it had been discarded. The expert who was called upon to testify in regard to these appliances, a man of many years' experience in the elevator business and for twenty-five years last past in the employ of the Otis Elevator Company, testified that such appliances were used in department stores and apartment houses, but that "I have seen but one or two elevator installations of this kind in office buildings, one of which was in Seattle and the other in Portland;" and that he had seen those appliances some eight years previous to the time at which he was testifying. The testimony further showed that, a month after the time of the injury to the Getty child, such a safety device had been installed in the Telephone building in Spokane, the elevator in that building, however, not being used to any appreciable extent by others than employees of the telephone company, the building not being what is known as an office building; and that such appliances had been installed some five months after the accident in the Crescent Department store in Spokane, both the Telephone building and the department store elevators being used, in the main, by women and children. This is a fair summary of the testimony bearing upon the question of the safety device.

The owner and operator of a passenger elevator is held to the highest degree of care compatible with the practical operation of the elevator. *Edwards v. Burke,* 36 Wash. 107, 78 Pac. 610; *Perrault v. Emporium˙Department Store Co.,* 71 Wash. 523, 128 Pac. 1049; *Atkeson v. Jackson Estate,* 72 Wash. 233, 130 Pac. 102; *Davis v. Burke,* 90 Wash. 495, 156 Pac. 525. But

this rule does not call for the installation and use of appliances in connection with the elevator which are not compatible with its practical operation, taken in connection with the class and character of the building in which the elevator is being used. The testimony in this case would have warranted the submission of the appellant's negligence, as a question for the jury to determine, based upon the failure to have in use such safety appliances as the respondents are contending for, had the elevator been one in use in a department store or apartment house. But the only testimony upon the question here negatives the practicability of their use in an elevator in an office building. It was therefore improper to instruct the jury that:

"If you are satisfied from a preponderance of the evidence that the defendant failed to exercise the highest degree of care compatible with the practical operation of the elevator in question in failing to have placed upon the said elevator a safety device, as recited in the complaint, which would render it impossible for the elevator to be moved up or down from any floor of the building when the elevator door at that point was open, that would constitute negligence, and if that negligence was the proximate cause of the injury to Virginia Getty, then the plaintiffs would be entitled to recover in this action, unless Virginia Getty or her father was guilty of contributory negligence, as I shall hereafter define that term for you;"

there being no evidence upon which the jury would have the right to determine that, in the practical operation of the appellant's elevator, he should have furnished a device which would prevent its being moved while the doors were open.

The respondent relies considerably upon the language of this court in the case of *Atkeson v. Jackson Estate,* above:

"But notwithstanding the fact that the elevator in question does not differ in construction materially

from the elevators in common use, we think the trial court correctly decided that the manner in which this elevator was constructed and operated in this particular instance constituted negligence. It must be remembered that in this state the operator of an elevator is a common carrier of passengers, and is held to the degree of care imposed upon common carriers generally; they must exercise with reference to the elevators under their charge the 'highest degree of care compatible with their practical operation' . . . And consistent with this rule, it is not too much to say that the appellant should have had a door or gate by which the entrance to the elevator cage itself could have been closed. It is not our intention to hold that all elevators now operated whose cages are without gates or doors are negligently constructed or operated. That question is not before us. What we mean to hold is that elevators, intended for the use principally of women and children, which have no regular elevator operator and have no gate or door by which to close the entrance to the elevator cage, are negligently constructed. . . . Without pursuing the argument further, therefore, we conclude that there was sufficient evidence of negligence on this branch of the case to justify the conclusion reached by the trial judge.''

The *Atkeson* case was one involving the operation of an elevator in an apartment house, and as the language quoted shows, it was dealing with an elevator used principally by women and children, and an elevator which had no regular operator, but was to be operated by its users. That case cannot be held to have laid down the rule—and it is plain that it did not so intend—that in an office building an elevator should be equipped in any certain manner. That case merely affirmed the rule which had been theretofore announced that the elevator owner, no matter what the character of the building in which he has his elevators, should exercise the highest degree of care compatible with practical operation. ''Practical operation'' means, of

course, different things in different kinds of buildings. It necessitates taking into account the character of the building and the services which the elevators are to perform, the nature and amount of the elevator traffic, the size of the building, and generally all the surrounding circumstances which would go to determine what is practicable. The evidence in this case shows that the operation of the appellant's elevator would be rendered impracticable by the use of the safety appliances, taken in connection with all of the circumstances we have just indicated. Therefore the court should not have submitted to the jury that phase of the respondent's case.

Upon the second point, the instruction complained of properly stated the law. The question of whether a child of the age of respondents' is a competent witness is a matter to be determined in the discretion of the court. *State v. Bailey*, 31 Wash. 89, 71 Pac. 715; *Hodd v. Tacoma*, 45 Wash. 436, 88 Pac. 842; *State v. Myrberg*, 56 Wash. 384, 105 Pac. 622; *Kalberg v. Bon Marche*, 64 Wash. 452, 117 Pac. 227; *State v. Smith*, 95 Wash. 271, 163 Pac. 759. The child was before the court and at that time appellant's counsel seems to have acquiesced in her not testifying. Both under the law and the state of the record the court was correct in its instruction, and furthermore, the error, if any, in not calling the witness to the stand, would seem to have been one in favor of rather than against the appellant, the child having been produced to support the respondents' case. Because of the erroneous instruction in regard to safety appliances, the judgment will be reversed and the cause remanded for new trial.

HOLCOMB, C. J., MITCHELL, PARKER, and MAIN, JJ., concur.