[No. 33001. Department Two. May 19, 1955.]

IRA T. GENTRY *et al., Appellants,* v. THE GREYHOUND CORPORA-
TION *et al., Respondents.*[1]

[1]Reported in 283 P. (2d) 979.

*Walthew, Oseran & Warner* and *Samuel C. Rutherford,* for appellants.

*Macbride, Matthews & Hanify,* for respondents.

ROSELLINI, J.—This is an appeal from a judgment of dismissal entered at the close of the plaintiffs' case upon defendants' motion for involuntary nonsuit, challenging the sufficiency of the evidence to justify a verdict for the plaintiffs.

The action was brought to recover for personal injuries suffered by Mrs. Gentry when she was thrown from her seat on the defendants' bus, on which she was a paying passenger. The accident occurred at an intersection on Second avenue in Seattle, as the vehicle was proceeding from the Greyhound south depot to the depot at Eighth avenue and Stewart street.

Plaintiffs' evidence disclosed that Mrs. Gentry was reclining sideways, with her feet on the floor, on the long back seat of the bus by the left window and her husband was seated on the same seat by the window on the right side of the bus when the vehicle came to a stop at the intersection. Mr. Gentry was looking out of the window and observed that, when the light turned green and the bus began to proceed through the intersection, an unidentified automobile crossed on the red light in front of the bus, and that the operator brought the bus to a sudden halt to avoid a collision. The bus was holding up traffic, and as soon as the path was clear the operator started on across the intersection; and, in the words of Mr. Gentry, "he was driving normally."

In the meantime, Mrs. Gentry had been thrown from her seat onto the floor behind the seat in front of her. She did

not cry out nor ask for help, but made two attempts to get back on the seat, both of which were thwarted by the jolting or lurching of the bus. Her husband then came to her aid and helped her back onto the seat. Mrs. Gentry explained, "That was the only time he helped me, was when I sat up on the seat. That was the only time he could get hold of me."

When the bus reached the Stewart street depot, the plaintiffs reported the accident to the driver. According to his testimony, this was the first notice he had of the occurrence. The driver testified he did not remember making any sudden stops as he drove up Second avenue, although he searched his memory after talking with appellants at the terminal. He heard no fall, exclamation, or noise among his passengers. The passengers had all left the bus when the plaintiffs approached him, and he was unable to secure the names of any witnesses. None of the passengers, other than the plaintiffs, testified at the trial.

Mrs. Gentry seeks damages only for the injuries which were the result of the jostling from the lurching of the bus while she was attempting to regain her feet after her initial fall.

 Upon a motion for involuntary nonsuit in a jury trial, a judgment of dismissal is properly entered if there is no evidence nor reasonable inference from evidence which will sustain the plaintiff's case. *Richards v. Kuppinger*, *ante* p. 62, 278 P. (2d) 395 (1955). In reviewing this ruling, we cannot weigh the evidence, but must view it and all reasonable inferences from it in the light most favorable to plaintiffs to determine whether it is sufficient to justify, though not to compel, a verdict for them. *Lee v. Sievers*, 44 Wn. (2d) 881, 271 P. (2d) 699 (1954).

 While a carrier is held to the highest degree of care consistent with the practical operation of its vehicles, it is not liable for injuries received from ordinary jolts and jerks, necessarily incident to the mode of transportation, which are not the result of negligence. In order to establish liability, there must be evidence of what appeared to take

place as physical facts from which it can be inferred that the operator of the vehicle was negligent, or evidence capable of conveying to the ordinary mind a definite conception of some conduct on the part of those in charge of the vehicle, outside of that of ordinary experience, on which a finding of negligence could rest. *Nopson v. Seattle*, 33 Wn. (2d) 772, 207 P. (2d) 674 (1949); *Wade v. North Coast Transp. Co.*, 165 Wash. 418, 5 P. (2d) 985 (1931), and cases cited therein.

■ Appellants at the trial, and in their brief, admitted that Mrs. Gentry was thrown from her seat when the bus was stopped suddenly to avoid an accident. Mr. Gentry testified that the bus was operated normally after the emergency stop. Mrs. Gentry's only testimony as to the manner of operation after the initial stop was that she "went down" twice, on attempting to extricate herself from her position on the floor, when the bus "gave another jolt" or "started with a bang." Under our cases, this testimony alone could not justify a verdict for the plaintiff.

■ Appellants' chief argument seems to be that the jury could infer negligence on the part of the driver in failing to observe Mrs. Gentry's predicament after the emergency stop and in failing to wait for her to get up or come to her aid. There would be merit to this argument had the appellants' evidence tended to establish facts which would have placed the operator on notice of Mrs. Gentry's peril. The unusual nature of the stop was indicated only by the fact that she fell from a reclining position to the floor; Mr. Gentry was not jarred or thrown from his seat. Since none of the other passengers testified, the jury could not speculate as to whether others were affected.

Mrs. Gentry was down on the floor behind one of the rear seats, and a glance in the rear-view mirror could not have revealed her position to the driver. She did not get out into the aisle, and her husband did not rise to help her until after her second fall. If the operator had observed her then, it would have been after all of her injuries had occurred. She did not cry out nor notify the driver in any way that she had fallen or was having difficulty getting up. He was un-

aware that there had been an accident until it was reported to him by the appellants when the bus reached its destination.

The bus was halted in the middle of an intersection with traffic pressing from behind. Could a jury reasonably infer that, after a stop which was not violent enough to disturb a man seated in an upright position, the driver was negligent in proceeding in a normal way when a glance in the mirror would not have revealed a passenger on the floor behind the seats, and he had not been given any notice that an accident had occurred? The law does not require one to look and see what is not there for him to see, nor does it require an operator of a conveyance to leave the driver's seat to make an inspection of his bus, while halted in the midst of a busy intersection, when no circumstance is shown which would cause him to realize that one of his passengers had fallen from his seat or was in a precarious position.

In *Wilcoxen v. Seattle*, 32 Wn. (2d) 734, 203 P. (2d) 658 (1949), relied upon by appellants, the evidence was in conflict as to whether the operator of the bus involved had an opportunity to see the vehicle which turned in front of him in time to avoid making a sudden stop. The question was properly submitted to the jury. No such conflict of evidence exists in this case.

Appellants argue further that the lurching of the bus, after it had stopped and started again, was unexplained and that the jury might infer that it was due to negligence. But we have held that the jerking, jolting, or lurching of a vehicle does not give rise to an inference of negligence when such movements are incident to the normal operation of the vehicle. *Wiggins v. North Coast Transp. Co.*, 2 Wn. (2d) 446, 98 P. (2d) 675 (1940).

Appellants cite other cases that likewise fail to support their argument. In *Mueller v. Washington Water Power Co.*, 56 Wash. 556, 106 Pac. 476 (1910), for example, a complaint was held sufficient where it was stated that the street car in question had stopped and that passengers were alighting; that plaintiff was in the act of stepping to the ground

when the car was suddenly started without warning, and that she was thrown violently to the ground. While it was not expressly alleged that the operator had knowledge of the fact that the plaintiff was alighting, his knowledge can be inferred from the allegation that the car had stopped for the purpose of allowing passengers to descend. Had it been proven in that case that the plaintiff attempted to alight while the car was in motion, there would have been no liability.

In *Blakney v. Seattle Electric Co.*, 28 Wash. 607, 68 Pac. 1037 (1902), we held that a plaintiff should have been nonsuited when her evidence showed that the injuries complained of occurred when she attempted to step from a street car in motion without having given the operator notice of her desire to alight.

There is no evidence in this case from which the jury had a right to find negligence, and there are no facts supported by evidence from which negligence could reasonably be inferred. The trial court correctly granted the motion for involuntary nonsuit and entered its judgment of dismissal.

The judgment is affirmed.

HAMLEY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.