[No. 36779.   Department Two.   February 20, 1964.]

MARGARET BENTON, *Appellant*, v. FARWEST CAB COMPANY, INC., *Respondent.**

*Orvin H. Messegee,* for appellant.

*Wayne Murray* (of *Murray, Dunham & Waitt*), for respondent.

DONWORTH, J.—This action was instituted by appellant against respondent taxicab company (whose correct corporate name is Farwest Service Corporation) for injuries al-

*Reported in 389 P. (2d) 418.

legedly received while a passenger in a cab operated by it.

The case was tried before the court sitting with a jury. When appellant rested her case, respondent's counsel also rested without submitting any testimony and moved for a directed verdict in its favor. This motion was granted by the trial court. Subsequently, the court entered its judgment of dismissal with prejudice reciting that the court was of the opinion "that the plaintiff had failed to establish by a preponderance of the evidence that the taxicab was being operated in a negligent manner at the time" she was allegedly injured.

Thereafter, appellant's motion for new trial was heard and denied. Notice of appeal was later served and filed.

The single assignment of error is that the trial court erred in directing a verdict for respondent. The answer to the question raised by this assignment depends on whether appellant's evidence established a prima facie case of negligence against respondent.

We have reviewed the evidence presented by appellant contained in the statement of facts and have considered it in the light most favorable to appellant, as we must in deciding its sufficiency in the face of respondent's challenge.

Briefly stated, the testimony bearing upon respondent's alleged negligence may be summarized as follows:

Appellant had been a restaurant operator in Seattle for 30 years. At the time of the occurrence which gave rise to this action, she was operating a restaurant on Second Avenue near Marion Street. She lived in an apartment on Bellevue Avenue. She had recently lost her husband who had been active with her in the restaurant business.

On March 7, 1960, about 7 p.m., she called a Farwest Cab to take her from the restaurant to her apartment, which was a distance of about 2 miles. She had been using Farwest cabs for 20 years. On this occasion she got into the cab, which proceeded south on Second Avenue to the next intersection (at Marion Street), where the driver made a left turn. The cab proceeded east on Marion Street up the hill. Between Second and Sixth Avenues, Marion Street is very

steep, except at intersections (where it is comparatively level).

As the cab passed through the intersection of Fourth Avenue and Marion Street, appellant received the injuries of which she complained in this action. Her description of what happened is as follows:

"Q. Tell us now, Mrs. Benton, what happened as the cab proceeded easterly on Marion Street. A. Well, it was quite a stormy night and the man picked me up and we started up Marion there, and we got to this particular—well, the street is level there at that intersection, and then it is very steep. It goes—it starts off quite steep there. And when we went over that place—we took a cab home every night, and when we went over this place I kind of braced myself because it was a stormy night and I realized he was going pretty fast. . . . Q. Can you describe a little more graphically how this driver was operating his cab? A. Well, he was —he seemed to be in a terrible hurry to get wherever we were going, and naturally, just annoyed— Q. Did you give him any instructions that you were in a hurry to get home? A. No, I didn't. Q. What was the name of this cab? A. Far-west cab. Q. What was the color of the cab? A. Green. Q. Is it possible at all that you could have made a mistake and gotten in some other cab? A. I called the same cab every night at 7:00 o'clock. Q. Was this driver anybody whom you know? A. No, he wasn't. . . . Q. Can you estimate for us the speed that this cab driver was proceeding? A. No, I can't. Q. You cannot? A. No. Q. Compared to your normal trips on other occasions, how would you compare this one? A. Well, he was going pretty fast. The other drivers— . . . Q. (By Mr. Messegee) Did you or did you not take any precautions as you approached this incline? A. Yes, I did. . . . Q. Despite these precautions you say you were taking, what happened? Tell us what happened to you within the cab. A. Well, it just threw me up toward the top of the car and then I came back down and hit on this side here, just a jar. Q. You are indicating, for the record now, the right side? Is that what you just indicated? A. Yes. Q. What did you do with your hands? What you say with your hands the Reporter can't get down. Let me ask you this: Did you feel at the time that you had been injured? A. All I felt was sort of like a cramp in the hip. Q. At that time did you make any complaint to the cab driver? A. Yes, I did. I said to him, I said, 'I hope

you didn't hurt my back.' Q. That was how long afterward? A. Well, that was about a block away from home that I said that to him. Q. At that time were you feeling in such a way that you had some doubt in your mind as to whether or not your back had been injured? A. I didn't think my back was hurt at the time. Having this cramp and this jar, I said to him, 'I hope you didn't hurt my back.' Q. How about the top of your head, what if anything did you notice about that? A. I didn't notice anything at that time."

Appellant also testified that shortly after arriving at her apartment she telephoned the Farwest Company and told them what had happened with reference to her ride home in one of their cabs. She did not ask to whom she was talking, but whoever it was promised to send a representative to discuss the matter with her.

The foregoing is substantially all of appellant's evidence except that relating to the issue of damages.

The question before us for decision is whether the evidence above referred to is sufficient to require the issue of respondent's negligence to be submitted to the jury.

It is stated by appellant that the trial court, in granting respondent's motion for a directed verdict, relied on our holding in *Wade v. North Coast Transp. Co.,* 165 Wash. 418, 5 P. (2d) 985 (1931).

In that case, a small child, who was a passenger on a bus, was injured when a suitcase fell from an overhead baggage rack. This incident was claimed to have been caused by a sudden lurch or jerk in the operation of the bus when the driver turned a corner too fast onto a graveled portion of the street.

In affirming the trial court's ruling in that case, that no prima facie case of negligence on the part of the transportation company had been established, we said:

"The first question is whether the evidence as to the speed, lurch or jerk, and the swaying of the passengers was sufficient to take the case to the jury. The general rule is that, when the injury and the circumstances attending it are so unusual and of such a nature that it could not well have happened without the operator of the vehicle being negligent, there arises a presumption of negligence. . . .

" . . .

"In order to establish liability, there must be evidence of what appeared to take place as physical facts from which it can be inferred that the operator of the vehicle was negligent, or evidence capable of conveying to the ordinary mind a definite conception of some conduct on the part of those in charge of the car, outside of that of ordinary experience, on which a finding of negligence could rest. [citations omitted]

"For the ordinary jolts and jerks incident to transportation in rounding curves, there is no liability; and to say that a vehicle is going very fast or faster than it should go, is not evidence of excessive speed. . . ."

█ The *Wade* case is somewhat similar to the present case as to evidence of negligence. Appellant's only testimony that would point to negligence on the part of the driver of the taxicab was that he was going "pretty fast" up a steep hill. Then, as the cab started up the incline from Fourth Avenue, she was thrown upward from the seat, striking her head on the roof of the cab, and then she fell back into the seat and felt a cramp in her right hip.

In addition to the *Wade* case, appellant cites the following cases in support of her contention that the evidence produced by her was sufficient to make out a prima facie case: *Keller v. Seattle*, 200 Wash. 573, 94 P. (2d) 184 (1939); *Wilcoxen v. Seattle*, 32 Wn. (2d) 734, 203 P. (2d) 658 (1949); *Nopson v. Seattle*, 33 Wn. (2d) 772, 207 P. (2d) 674 (1949); *Gentry v. Greyhound Corp.*, 46 Wn. (2d) 631, 283 P. (2d) 979 (1955); and *Young v. Seattle*, 60 Wn. (2d) 805, 376 P. (2d) 443 (1962).

These cases involve injuries received by passengers on public conveyances as the result of sudden jerks and jolts in the operation thereof. These conveyances (streetcars or buses) usually carry a number of passengers and stop and start frequently, sometimes with jerks or jolts.

We do not think that these cases support appellant's contention, nor do they demonstrate that the manner of operation of the cab, which caused appellant to be bounced upward from the seat, was more than a usual jolt normally experienced when riding in taxicabs. Appellant's evidence

is not sufficient to make out a claim of negligence within the rule of cases above cited.

Appellant further contends that the doctrine of res ipsa loquitur should apply here and thus carry the case to the jury. The proper basis for the application of res ipsa loquitur is set out in the case of *Nopson v. Seattle, supra.* We are of the opinion that the case at bar is not a proper one for the application of the doctrine because the evidence introduced by appellant does not demonstrate that the event was of such a character that it could not have happened without negligence on the part of the cab driver. In other words, she has failed to show that the bounce she received was more than a normal incident of travel in a taxicab up a hill.

■ We should also have in mind the test to be used in reviewing the action of a trial court in directing a verdict for respondent. The rule is stated in *Wold v. Jones,* 60 Wn. (2d) 327, 373 P. (2d) 805 (1957), as follows:

" . . . Did appellants present sufficient evidence to be entitled to have the issue of liability decided by the jury?

"It is true that:

" 'No discretion is involved in ruling on a motion for a directed verdict. Such motion may be granted only where there is, as a matter of law, no evidence or reasonable inference therefrom to support the view of the party against whom the motion is made. . . .' *Bailey v. Carver,* 51 Wn. (2d) 416, 319 P. (2d) 821 (1957).

"However, the word 'support' in the above quotation refers to that evidence which would support a jury verdict. If there is not substantial evidence adduced at the trial which is legally sufficient to support a jury verdict in favor of the party opposing a motion for directed verdict, the motion must be granted. 'This court has refused to follow some other courts in holding that a scintilla of evidence is sufficient to carry a case to the jury.' *Knight v. Trogdon Truck Co.,* 191 Wash. 646, 653, 71 P. (2d) 1003 (1937)."

Considering, in the light most favorable to her, every reasonable inference that can be drawn from the evidence produced by appellant, we are of the opinion that appellant has not presented substantial evidence which would support a jury verdict in her favor.

For the above reasons, the judgment of the trial court dismissing the action should be affirmed.

OTT, C. J., FINLEY, and WEAVER, JJ., and DAWSON, J. Pro Tem., concur.