[No. 9533–9–III. Division Three. July 25, 1989.]

VENETA L. BROWN, *Appellant,* v. THE CRESCENT STORES, INC., *Respondent.*

*Raymond Clary* and *Etter & McMahon, P.S.,* for appellant.

*Gregory Arpin* and *Layman, Loft, Smythe & Arpin,* for respondent.

SHIELDS, J.—Veneta L. Brown sued The Crescent Stores, Inc., for personal injuries she sustained when she fell in an automatic elevator owned and operated by The Crescent in Spokane. Otis Elevator Company, which maintained and repaired the elevators, was joined as a third party defendant by The Crescent. The Crescent and Otis in turn moved

for summary judgment of dismissal. Those motions were granted August 16, 1988. Only Mrs. Brown appeals.[1]

The record discloses The Crescent maintains three automatic and two manually operated elevators in its downtown Spokane store. On February 11, 1987, Mrs. Brown, then aged 90, boarded one of the automatic elevators after attending a Widows of World War I luncheon on the sixth floor. Those luncheons had been regularly held at The Crescent for 6 or 7 years. When she was on the threshold of the elevator entrance, the door allegedly shot out at her with great force and struck her right side, causing her to fall inside the elevator on her right side. Mrs. Brown was a slight woman with osteoporotic bones and degenerative arthritis causing her some instability. She suffered a broken right hip which necessitated surgery. At the time of hearing the motion for summary judgment, she was incapable of caring for herself.

When reviewing a summary judgment, our inquiry is the same as that of the trial court: to determine whether the pleadings, affidavits, depositions and admissions, when viewed most favorably to the nonmoving party, show no genuine issue of material fact exists so that the moving party is entitled to judgment as a matter of law. CR 56(c); *Orion Corp. v. State,* 103 Wn.2d 441, 461–62, 693 P.2d 1369 (1985). The moving party has the initial burden of proof when such a motion is made and supported, which shifts to the nonmoving party to show such an issue does exist. *Hiskey v. Seattle,* 44 Wn. App. 110, 112, 720 P.2d 867, *review denied,* 107 Wn.2d 1001 (1986); CR 56(e).

As an elevator operator, The Crescent is a common carrier owing a duty of the highest care for its passengers' safety compatible with the practical operation of its business. *See Dabroe v. Rhodes Co.,* 64 Wn.2d 431, 434, 392 P.2d 317 (1964); *Davis v. Burke,* 90 Wash. 495, 498–99, 156 P. 525 (1916). However, it is not an insurer; the fact of an

---

[1]Mrs. Brown died from causes unrelated to this action while this appeal was pending.

accident and resulting injuries alone does not give rise to liability. *See Rathvon v. Columbia Pac. Airlines,* 30 Wn. App. 193, 204, 633 P.2d 122 (1981), *review denied,* 96 Wn.2d 1025 (1982). Neither is The Crescent liable

> for injuries received from ordinary jolts and jerks, necessarily incident to the mode of transportation, which are not the result of negligence. In order to establish liability, there must be evidence of what appeared to take place as physical facts from which it can be inferred that the operator of the vehicle was negligent, or evidence capable of conveying to the ordinary mind a definite conception of some conduct on the part of those in charge of the vehicle, outside of that of ordinary experience, on which a finding of negligence could rest.

*Gentry v. Greyhound Corp.,* 46 Wn.2d 631, 633–34, 283 P.2d 979 (1955). *See also Benton v. Farwest Cab Co.,* 63 Wn.2d 859, 862–63, 389 P.2d 418 (1964); *Wade v. North Coast Transp. Co.,* 165 Wash. 418, 420–21, 5 P.2d 985 (1931).

Further, certain phrases describing violent movement of a conveyance device do not necessarily establish negligence. In *Wilcoxen v. Seattle,* 32 Wn.2d 734, 738, 203 P.2d 658 (1949) (quoting *Keller v. Seattle,* 200 Wash. 573, 94 P.2d 184 (1939)), involving a fall on a bus, the court stated:

> "'Accepting as true plaintiff's evidence as to how the accident happened, we are required to determine whether it is sufficient to show that the car was operated in a negligent manner. In a long line of decisions, recently reviewed by us in *Smith v. Pgh. Rys. Co.,* 314 Pa. 541, [171 A. 879 (1934)] this court and the Superior Court have held that statements that a street car "started violently," "started with a violent jerk," "started with a sudden, unusual, extraordinary jerk," "stopped with a jerk," "came to a hard stop," "started up all of a sudden, with an awful jerk, and stopped all of a sudden," and the like, are not of themselves sufficient to show negligent operation of the car, *but that there must be evidence inherently establishing that the occurrence was of an unusual and extraordinary character,* or evidence of its effect on other passengers sufficient to show this.'" (Italics ours.)

These cases apply equally to elevators as to other conveyance devices. *Cf. Edwards v. Burke,* 36 Wash. 107, 112, 78 P. 610 (1904) (the same duties which apply to carrying passengers vertically also apply to carrying them horizontally).

Here, the evidence presented in support of summary judgment was that no door closing device would prevent elevator doors from coming into contact with passengers; therefore, some contact was within the ordinary incident of travel. Evidence was also presented that the electronic door detector was widely used and complied with all applicable statutes and regulations. Regular inspections both before and after the accident revealed no defects in the elevators. Mrs. Brown was elderly, frail and unsteady on her feet. The evidence that she fell to the right side of the elevator after being struck on that side was consistent with the fact she lost her equilibrium. In the absence of other physical facts, the allegation the elevator door "shot out at her" was insufficient to show an occurrence of unusual or extraordinary character to warrant a trial. *See Wile v. Northern Pac. Ry.,* 72 Wash. 82, 86, 129 P. 889 (1913).

Mrs. Brown contends the affidavit submitted by her expert in which he interpreted the regulations and manuals governing sensing devices for elevator doors as prohibiting any contact with passengers, creates a question of fact. Those regulations and manuals include (1) WAC 296–81–305;[2] (2) an Otis field manual and "Otis Monitor" sheet which indicate the electronic door detector is used in high-rise, high–performance elevator systems, so the presence of a person within a prescribed proximity to the elevator doors will cause them to stop and reopen; and (3) the 1986 American National Standards for buildings and facilities

---

[2]WAC 296–81–305 provides in part:

"Door protective and reopening device. Doors closed by automatic means shall be provided with a door reopening device which will function to stop and reopen a car door and adjacent hoistway door in case the car door is obstructed while closing. This reopening device shall also be capable of *sensing an* object or person in the path of a closing door without requiring contact for activation at a nominal 5 and 20 inches above the floor." (Italics ours.)

for physically handicapped people which indicates elevator doors must be equipped with door opening devices which sense obstructions and "shall not require physical contact to be activated, *although contact may occur before the door reverses . . .*"[3] (Italics ours.) ANSI A117.1–1986, § 4.10.6, at 36.

These regulations and manuals do not prohibit contact by elevator doors with passengers. To the contrary, they recognize contact may occur. Mrs. Brown's expert's affidavit, which interprets the legal effect of the regulations and manuals, does not raise a genuine factual issue that would preclude summary judgment. *See Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 49 Wn. App. 130, 133, 741 P.2d 584 (1987), *aff'd*, 110 Wn.2d 912, 757 P.2d 507 (1988); *Hiskey v. Seattle, supra* at 113.

■ Mrs. Brown urges the facts here permit an inference of negligence pursuant to res ipsa loquitur. We disagree.

"The rule of *res ipsa loquitur* is based upon the apparent fact that the accident could not have happened without negligence on the part of the carrier; or, upon the literal meaning of the expression, that the thing itself speaks, and shows *prima facie* that the carrier was negligent."

*De Yoe v. Seattle Elec. Co.*, 53 Wash. 588, 591, 102 P. 446, 104 P. 647, 1133 (1909) (quoting *Firebaugh v. Seattle Elec. Co.*, 40 Wash. 658, 82 P. 995 (1905)). The nature of the accident itself must manifest that it would not have occurred without negligence. *See Miller v. Kennedy,* 91 Wn.2d 155, 159–60, 588 P.2d 734 (1978); *De Yoe,* at 590. The evidence showed contact with elevator doors is inevitable. Were we to apply the doctrine here, operating elevators without creating an inference of negligence would be impossible. Under these circumstances, we will not presume

---

[3]That publication also states in § A4.10.6, at 78:

"Owing to the kinetic nature of the motion, reversal of the closing door is not instantaneous. Until the continued movement of the door is arrested, it is possible that limited movement of the door may cause it to come in contact with a person or object in its path."

negligence. *See Kaiser v. Suburban Transp. Sys.,* 65 Wn.2d 461, 468, 398 P.2d 14, 401 P.2d 350 (1965); *Isaacs v. Warren Terrace, Inc.,* 31 Ohio Misc. 65, 277 N.E.2d 88, 90 (1971). In the latter case, which also involved an elderly passenger, the court stated at page 68:

> This entire procedure [the door came in contact with the plaintiff's shoulder and then fully opened] was consistent with the proper functioning of the door as distinguished from any improper functioning. Every user of an automatic elevator at times finds that a door is closing upon him sooner than he expected that it would. . . . To sustain a finding for the plaintiff as contended by her in the within cause would require a finding in favor of any plaintiff who sustained an injury when he came in contact with an opening or closing door of an automatic elevator—even when there was no malfunctioning.

*See also Young v. United States,* 295 F. Supp. 329 (D.N.D. 1969); *Darlington Corp. v. Finch,* 113 Ga. App. 825, 149 S.E.2d 861 (1966); *Pratt v. Freese's, Inc.,* 438 A.2d 901 (Me. 1981); *Feblot v. New York Times Co.,* 32 N.Y.2d 486, 299 N.E.2d 672, 346 N.Y.S.2d 256, 63 A.L.R.3d 881 (1973).

Mrs. Brown also contends her expert's affidavit creates an issue of fact whether The Crescent should have installed photoelectric eyes in its elevators in performance of its duty to exercise the highest degree of care compatible with the potential operation of the elevator. The Crescent's duty however,

> does not call for the installation and use of appliances in connection with the elevator which are not compatible with its practical operation, taken in connection with the class and character of the building in which the elevator is being used.

*Getty v. Hutton,* 110 Wash. 124, 127, 188 P. 10 (1920). In *Leach v. School Dist. 322,* 197 Wash. 384, 387–88, 85 P.2d 666 (1938) (quoting *Adduci v. Boston Elevated Ry.,* 215 Mass. 336, 102 N.E. 315 (1913)) the court further stated:

> "While a common carrier is bound to exercise a high degree of care and diligence in the selection, maintenance, inspection and use of its cars and their appliances, it is not required to provide immediately and regardless

of expense every new equipment that human skill and ingenuity devises to prevent accidents. It is bound to adopt approved appliances that are in general use and necessary for the safety of passengers, but it is not obliged to discard those that always have been found to be adequate and safe merely because they may be a source of possible danger to a passenger. . . ."

The Crescent's uncontroverted affidavit established the photoelectric eye was neither available at the time of the accident nor a guarantee that passengers would avoid contact with elevator doors. Thus, there was no question for trial concerning this issue.

Neither do we find merit in Mrs. Brown's contention that a warning was required. She has not suggested one, consistent with the practical operation of business, concerning the common incidents of ordinary travel in elevators.

 We do however find an issue of fact exists whether The Crescent had a duty to Mrs. Brown to provide its manually operated elevators in light of the fact this particular group of elderly women were invitees to The Crescent for regular luncheons. The Crescent argues it had no duty to provide alternatives to the automatic elevators because they were not dangerous, citing RCW 70.87.020.[4] Compliance with safety regulations, however, does not alone necessarily satisfy the higher degree of care placed on a common carrier. *See Dennis v. Maher,* 197 Wash. 286, 291, 84 P.2d 1029 (1938); *Singer v. Martin,* 96 Wash. 231, 235, 164 P. 1105 (1917). As such, The Crescent's duty, in the circumstance presented here, was commensurate with its passenger's age, size and physical condition of which it had knowledge. *Benjamin v. Seattle,* 74 Wn.2d 832, 834, 447 P.2d 172 (1968); *Sullivan v. Seattle Elec. Co.,* 44 Wash. 53, 61, 86 P. 786 (1906). Mrs. Brown presented evidence of

---

[4]RCW 70.87.020 states in part: "In any suit for damages allegedly caused by a failure or malfunction of the conveyance, conformity with the rules of the [Department of Labor and Industries] is prima facie evidence that the operation, erection, installation, alteration, inspection, and repair of the conveyance is reasonably safe to persons and property."

prior accident reports made to The Crescent involving elderly passengers in its elevators. Evidence was also presented that Crescent employees were available to operate its manual elevators. These facts raise a question whether The Crescent should have reasonably anticipated an accident might occur and was therefore obligated to take precautionary measures. *See Toftoy v. Ocean Shores Properties, Inc.,* 71 Wn.2d 833, 835, 431 P.2d 212 (1967); *Boyd v. Edmonds,* 64 Wn.2d 94, 97, 390 P.2d 706 (1964); *Peterson v. Seattle,* 51 Wn.2d 187, 316 P.2d 904 (1957). We reverse and remand for trial to determine The Crescent's liability on this limited issue.

THOMPSON, C.J., and GREEN, J., concur.