**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| JAMES M. LUTTRELL, an individual, | No. 56003-8-II |
| Appellant, | |
| v. | |
| TACOMA HOUSING AUTHORITY, a Washington municipal corporation, | UNPUBLISHED OPINION |
| Respondent. | |
| THYSSENKRUPP ELEVATOR CORPORATION, a Georgia corporation licensed to do business in Washington, | |
| Defendant Below. | |

VELJACIC, J. — James Luttrell suffered an injury after riding in a malfunctioning elevator. He resides in a building operated by the Tacoma Housing Authority (THA). On the morning of, but prior to, Luttrell's accident, THA received a report that one of its elevators was malfunctioning. It contacted its maintenance contractor, confirmed that warning signs were posted and that the elevator fire door was closed, blocking access to the elevator. Luttrell saw the warning sign but disregarded it. He noticed that the fire door to the elevator was closed, but opened it and rode in the elevator anyway. The elevator moved smoothly until striking the bottom of the elevator shaft. He sued THA for negligence. THA moved for summary judgment, which the trial court granted. On appeal, Luttrell argues that THA failed to keep the premises reasonably safe and failed to provide adequate warning to protect Luttrell.

We affirm the trial court's summary judgment order.

FACTS

James Luttrell suffered an injury after traveling in an elevator that struck the bottom of the elevator shaft. Luttrell lives in a multi-story apartment building operated by the THA. The building includes two separate elevators, elevator 1 and 2. THA contracted with ThyssenKrupp (TK) to service the elevators in Luttrell's building. TK conducted regular maintenance of such elevators. TK also maintained and upgraded both elevators prior to Luttrell's accident. The Department of Labor and Industries inspected the elevator upgrade and approved it.

After the upgrade, the elevators experienced several issues that TK addressed, including unresponsive buttons, slowly opening and closing doors, and slowly settling at a selected floor. On the morning of, but prior to, Luttrell's accident, THA received a report of elevator 1 dropping. A THA employee closed the fire doors to elevator 1 on each floor. A person must physically open a fire door to gain access to the elevator. However, the fire door for elevator 2 was left open; elevator 2 remained operable. And there were stairs between the two elevators, which were available for use.

THA called TK to service the malfunctioning elevator. In addition, the key-holder[1] posted a handwritten warning sign on the elevator fire door on each floor. The sign included two misspellings, and stated "Elavator is droping. Don't use." Clerk's Papers (CP) at 314. Because no THA staff were present to make an official sign, the THA employee also asked one of its property managers to make an official sign upon her arrival on site. The key-holder stated that a THA staff person arrived and prepared typed signs 20-40 minutes after reporting the malfunction.

Prior to boarding the elevator 1, Luttrell saw the sign and opened the fire door blocking access to the elevator. He testified that he opened the fire door because he had been previously

---

[1] A key-holder is a THA building tenant representative.

asked to do so when fire alarms were cleared. The fire doors for both elevators close automatically when a fire alarm is triggered. Luttrell acknowledged that only the fire door to elevator 1 was closed. Even though he saw the sign, Luttrell stated that "upon [his] first inspection" he believed the sign was an advertisement, and only after the accident did he read it and thought it was someone's opinion about the elevator. CP at 224.

After Luttrell pressed the elevator button, it moved smoothly without stopping until it struck the bottom of the elevator shaft. Luttrell was trapped in the elevator. THA called 911 to dispatch the fire department, but a TK technician arrived first and freed Luttrell. Luttrell experienced hip pain, along with stomach and esophageal pain from acid reflux after the accident.

Luttrell sued THA and TK in tort under theories of negligence and res ipsa loqitur. THA and TK moved for summary judgment, arguing that under the undisputed facts of the case Luttrell could not satisfy all elements of his claims. The trial court granted summary judgment. Luttrell appeals the trial court's order granting summary judgment to THA, but does not appeal the summary judgment as to TK.

ANALYSIS

I.     STANDARD OF REVIEW

We review a superior court's order granting summary judgment de novo, and perform the same inquiry as the superior court. *Strauss v. Premera Blue Cross*, 194 Wn.2d 296, 300, 449 P.3d 640 (2019); *Estate of Carter v. Carden*, 11 Wn. App. 2d 573, 581, 455 P.3d 197 (2019). We consider the facts and the inferences from the facts in a light most favorable to the nonmoving party. *Bremerton Pub. Safety Ass'n v. City of Bremerton*, 104 Wn. App. 226, 230, 15 P.3d 688 (2001).

We may affirm a grant of summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *RockRock Grp., LLC v. Value Logic, LLC*, 194 Wn. App. 904, 913, 380 P.3d 545 (2016). "A genuine issue is one upon which reasonable people may disagree," and "[a] material fact is one upon which all or part of the outcome of the litigation depends." *Youker v. Douglas County*, 178 Wn. App. 793, 796, 327 P.3d 1243 (2014); *Hill v. Cox*, 110 Wn. App. 394, 402, 41 P.3d 495 (2002). If a reasonable fact finder could reach only one conclusion, we may decide the question as a matter of law and affirm a grant of summary judgment, "even where the issue normally requires resolution by a fact finder." *Old City Hall LLC v. Pierce County AIDS Found.*, 181 Wn. App. 1, 9-10, 329 P.3d 83 (2014).

II.     LANDOWNER PREMISES LIABILITY

Luttrell argues that there is a genuine issue of fact as to whether the warning was reasonable because it appeared sloppy and unprofessional. He also argues that THA was negligent because it should have completely shut down the elevator. He generally argues that THA owed him a duty of care to maintain the elevator in a safe condition and failed to do so. We conclude that Luttrell has failed to show there is a genuine issue of material fact and that the warning was sufficient as a matter of law.

A.      Legal Principles

A landowner owes a person a duty of care based on their status upon the land. *Curtis v. Lein*, 169 Wn.2d 884, 890, 239 P.3d 1078 (2010). Tenants are invitees and landowners must exercise reasonable care to maintain common areas accessible to them in a safe condition. *Mucsi v. Graoch Assocs. Ltd. P'ship No. 12*, 144 Wn.2d 847, 855, 31 P.3d 684 (2001). Washington law

adopts the Restatement (Second) of Torts § 343 approach to landowner liability for dangerous conditions. It states:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343 (1965); *Lein*, 169 Wn.2d at 890. Reasonable care to protect a tenant "'requires the landowner to inspect for dangerous conditions, followed by such repair, safeguards, or warning as may be reasonably necessary for [a tenant's] protection under the circumstances.'" *Lein*, 169 Wn.2d at 890 (internal quotation marks omitted) (quoting *Mucsi*, 144 Wn.2d at 856).

B.     Analysis

Luttrell first asserts that THA owed him a duty as an invitee, which THA does not dispute. Accordingly, he asserts that THA must act with reasonable care to keep its premises safe, which again, THA does not dispute. Luttrell's primary argument is that THA failed to adequately warn against the danger posed by the dropping elevator. More specifically, Luttrell argues that, though a sign was posted, THA's warning was unreasonable. Unfortunately, he fails to cite to any applicable authority from which we can infer unreasonableness.

1.     Warning

The issue of warning arises under the third element of § 343: whether THA failed to exercise reasonable care to protect its tenants against the danger. Reasonable care to protect a tenant "'requires the landowner to inspect for dangerous conditions, followed by such repair,

safeguards, or warning as may be reasonably necessary for [a tenant's] protection under the circumstances.'" *Lein*, 169 Wn.2d at 890 (internal quotation marks omitted) (quoting *Mucsi*, 144 Wn.2d at 856).

Luttrell cites to *Egede-Nissen v. Crystal Mountain, Inc.*, 93 Wn.2d 127, 606 P.2d 1214 (1980), for the proposition that a landowner or operator must provide adequate warning of dangerous conditions. However, that case addresses whether an invitee instead becomes a trespasser when they visit off-limit areas of a premises, in spite of adequate warning. *Id.* at 135-36. Moreover, whether there was a warning at all in that case was disputed. *Egede-Nissen v. Crystal Mountain, Inc.*, 21 Wn. App. 130, 133, 584 P.2d 432 (1978). It is understandable then, why neither our Supreme Court's opinion, nor its Division II antecedent addressed the adequacy of the warning. *See Crystal Mountain*, 93 Wn.2d at 133-34; *Crystal Mountain*, 21 Wn. App. at 134-37. *Crystal Mountain* is unhelpful.

Luttrell also cites to *Grove v. D'Allessandro*, 39 Wn.2d 421, 235 P.2d 826 (1951), for the proposition that whether a warning was given is a question of fact, and therefore summary judgment was improper in this case. But the case at bar presents no dispute as to whether a warning was given. Instead it is undisputed that a warning was given, even if there is dispute as to its adequacy. We do not read *D'Allessandro* to hold that the adequacy of a warning is always a question of fact.[2]

Here, it is undisputed that the key-holder posted the sign. It is also undisputed that Luttrell saw the warning sign but did not read it before the accident. Luttrell's failure to read or heed the warning does not nullify that the warning was posted, it was large enough for him to see, it was

---

[2] Besides, *D'Allessandro* does not help Luttrell. It expressly states that when a warning is provided, "We have repeatedly said that one cannot be heard to say that he did not see that which, without dispute in the evidence, was there to be seen had he looked." *Id.* at 427.

legible, it warned of the particular danger (the dropping elevator), and it instructed any potential user *not* to use the elevator; in conjunction with the closed fire door, no reasonable trier of fact could conclude that the warning was unreasonable. Whether the sign was sloppy and unprofessional in the opinion of a THA witness is immaterial absent authority to the contrary, which Luttrell has not provided. "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" *Nguyen v. City of Seattle*, 179 Wn. App. 155, 171, 317 P.3d 518 (2014) (internal quotation marks omitted) (quoting *State v. Logan*, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000)).

An opinion that a sign is sloppy and unprofessional alone is insufficient to create an issue of fact in this context. We conclude as a matter of law that THA properly warned of the danger.

### 2. Additional Safeguards

Next, Luttrell broadly argues that THA violated its duty of reasonable care because it could have done more to protect tenants. But the undisputed facts do not bear this out. Rather, THA contracted with TK to maintain the elevators in Luttrell's building, and TK conducted regular maintenance. THA modernized the elevators prior to Luttrell's accident. When THA received the report of the elevator dropping, it contacted TK to address the issue. TK responded the same day, and it arrived before the fire department, which was contacted after Luttrell became trapped in the elevator. Luttrell fails to show how a reasonable fact finder could conclude THA failed to satisfy its duty to repair the elevator, therefore he fails to raise a genuine issue of material fact. As a matter of law, THA satisfied its duty of care.

Luttrell fails to raise a genuine issue of material fact regarding the final element of § 343 and THA was entitled to judgment as a matter of law.

III.    COMMON CARRIER LIABILITY

Luttrell also argues that THA is liable as a common carrier.  "A common carrier owes the highest degree of care to its passengers."  *Tinder v. Nordstrom*, *Inc.*, 84 Wn. App. 787, 796, 929 P.2d 1209 (1997).  Such duty is "'commensurate with the practical operation of its conveyance at the time and place in question'" and "'consistent with the practical operation of its business.'"  *Id*. (quoting *Houck v. Univ. of Wash.*, 60 Wn. App. 189, 194, 803 P.2d 47 (1991); *Rathvon v. Columbia Pac. Airlines*, 30 Wn. App. 193, 202, 633 P.2d 122 (1981)).  A carrier is not liable for injuries resulting from ordinary jolts and jerks, necessarily incident to the mode of transportation, which are not the result of negligence.  *Gentry v. Greyhound Corp.*, 46 Wn.2d 631, 633, 283 P.2d 979 (1955).

In *Nordstrom*, the plaintiff was injured when an *escalator* she was traveling on suddenly stopped.  84 Wn. App. at 790.  The plaintiff sued, arguing that Nordstrom was a common carrier and should be held liable for violating its nondelegable duty to protect its passengers.  *Id*. at 796. The plaintiff pointed to case law that concluded there was a genuine issue of material fact on the issue of whether a store violated its common carrier duty when an elderly person was injured in an *elevator* and the store had prior reports of *elevator* accidents involving elderly passengers.  *Id*. at 796-97 (emphasis added).  The *Nordstrom* court distinguished that case law, concluding that Nordstrom was not liable as a common carrier because there were no prior reports of injuries on Nordstrom's escalators, the store reasonably maintained its escalators, it had placed warning signs for escalator use, and it provided alternative means of travel through the store.  *Id*. at 797.

Here, like the plaintiff in *Nordstrom*, Luttrell fails to raise facts under which a reasonable fact finder could conclude THA is liable as a common carrier.  He argues that THA should have turned off the elevator.  But pointing to one action THA could have performed is not sufficient to

establish negligence. Even assuming turning off the elevator would have been the *most* protective action, Luttrell fails to establish liability under a common carrier theory because of THA's other actions, which are factually undisputed: (1) There were no prior reports of injuries from the modernized elevators in Luttrell's building; (2) THA had TK modernize the elevators, which had passed Department of Labor and Industries inspection; (3) THA also regularly maintained the elevators through TK; (4) It provided a warning sign to prevent use of the malfunctioning elevator and closed the elevator with a fire door; and (5) There were alternative means of traveling through the building, including the stairs and elevator 2. As a matter of law, THA is not liable under common carrier liability.

Luttrell has failed to show facts in the record from which a reasonable fact finder could conclude THA is liable for his injuries under a premises liability theory or as a common carrier. He fails to raise a genuine issue of material fact, therefore THA was entitled to judgment as a matter of law. Accordingly, we affirm the trial court's summary judgment order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Maxa, J.

_____
Glasgow, C.J.