[No. 33256.   Department Two.   November 25, 1955.]

CHARLES HUFFORD et al., Appellants, v. GEORGE B. CICOVICH, Respondent.

PACIFIC OUTFITTING COMPANY, Appellant, v. GEORGE B. CICOVICH, Respondent.[1]

[1]Reported in 290 P. (2d) 709.

*Clarke, Clarke & Albertson* and *Daniel B. Trefethen, Jr.,* for appellants.

*Lycette, Diamond & Sylvester, Earle W. Zinn,* and *Murray & Murray,* for respondent.

HILL, J.—This is a smoke damage case. Plaintiffs Charles Hufford and wife operated an apparel store in Tacoma, and plaintiff Pacific Outfitting Company, a corporation, operated another such store. Both stores fronted on Broadway in a building which extends from that street to Commerce street, the entrances to the stores on Broadway being on a considerably higher level than the Commerce street entrances. The defendant, George B. Cicovich, operated a restaurant and cocktail lounge on the Commerce street level directly beneath the stores operated by the plaintiffs.

Shortly before midnight on September 10, 1951, there was a grease fire on the kitchen range in the restaurant. The fire department was called and was on the premises within a very few minutes. When the firemen entered the kitchen, fire was still visible on the range, and the premises were filled with a light, greasy smoke down to within about four feet of the floor. This fire, which will hereinafter be referred to as the range fire, was then quickly extinguished.

Shortly thereafter, fire was discovered in the ceiling of the cocktail lounge, that being a false ceiling some two feet lower than the structural ceiling. A passageway fifty-six inches in width led from the kitchen to Commerce street. The ceiling of this passageway and of the kitchen was the higher, true ceiling. The south wall of the passageway was a brick wall of the building. The north wall of the passageway was the south wall of the cocktail lounge and was of fire-resistant material but reached only as high as the false ceiling. Suspended from the true ceiling in the fifty-six-inch passageway was a galvanized iron pipe twenty-eight inches in diameter, referred to as a ventilating duct, which carried fumes, smoke, and, as in the present case, flames from the hood above the kitchen range to a chimney, a distance of some twenty-five to thirty feet. The wooden studding and wooden members that held the false ceiling of the cocktail lounge were exposed above the north wall of the passageway opposite the ventilating duct. Heat radiated from the pipe to the exposed wooden studding, which was combustible when subjected to excessive temperatures (*e. g.*, 450° for a twenty-minute period), was the cause of what we shall hereinafter refer to as the ceiling fire.

Smoke from the two fires entered the stores by way of a hole through which there had at one time been a pipe between the Broadway and Commerce street levels of the building, and by way of "any other hole there might be." Grease in the smoke was responsible for much of the damage to the wearing apparel and fixtures in the two stores and to the carpeting in one of them.

The Huffords and the Pacific Outfitting Company commenced separate actions to recover damages to their respective stores and the merchandise and fixtures therein. The cases were consolidated for trial and are likewise consolidated for the purposes of this appeal.

The cook and the dishwasher, the only persons present in the kitchen when the range fire started, were not available to testify, so there was no direct evidence as to the cause of that fire. There was evidence that range fires in restaurants are not infrequent occurrences and that they are

usually extinguished by the application of salt. Three witnesses testified that they saw the cook putting salt on the fire or the stove.

The plaintiffs urge that, while grease fires on restaurant ranges may not be unusual, this one was of such extent and duration that negligence could be inferred, and they rely upon the doctrine of *res ipsa loquitur*. The extent and amount of smoke damage sustained by the plaintiffs is not in dispute.

The trial judge concluded that no negligence was established and that, if the doctrine of *res ipsa loquitur* applied, he was not compelled to find and did not find negligence under the circumstances, and he entered a judgment of dismissal in both cases. The plaintiffs appeal.

■ Negligence is not to be assumed from the fact that there was a fire. Negligence causing a fire must be established by direct evidence or by a legitimate inference from the established facts and circumstances, *i. e.,* circumstantial evidence. *Cambro Co. v. Snook* (1953), 43 Wn. (2d) 609, 262 P. (2d) 767.

■ To determine whether the doctrine of *res ipsa loquitur* is applicable, the trier of the facts must recognize a distinction between what is mere conjecture and what is reasonable inference from the facts and circumstances. *Home Ins. Co. v. Northern Pac. R. Co.* (1943), 18 Wn. (2d) 798, 140 P. (2d) 507, 147 A. L. R. 849; *Cambro Co. v. Snook, supra.*

■ We will assume that the facts and circumstances in this case warranted an inference of negligence and, hence, that the doctrine of *res ipsa loquitur* is applicable. As pointed out in *Vogreg v. Shepard Ambulance Co.* (1955), *ante* p. 659, 289 P. (2d) 350, there is no magic in the phrase *"res ipsa loquitur."* It means simply that the facts and circumstances warrant an inference of negligence, not that they compel it; that they furnish circumstantial evidence of negligence where direct evidence is lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient. Application of that doctrine carries a plaintiff past a nonsuit and makes a case to be decided by the

trier of the facts, but it does not compel a decision favorable to the plaintiff. *Sweeney v. Erving* (1913), 228 U. S. 233, 240, 57 L. Ed. 815, 33 S. Ct. 416, Ann. Cas. 1914D, 905. (This case is quoted at length in *Singer v. Metz Co.* (1919), 107 Wash. 562, 567, 182 Pac. 614, 186 Pac. 327.)

Even if it is conceded that there were facts and circumstances sufficient to warrant an inference of negligence in this case, the trial judge was not compelled to make that inference. The burden of proof was on the plaintiffs, and when all the evidence was in it was still for the trial judge to determine whether the plaintiffs had established negligence by a preponderance of the evidence. *Briglio v. Holt & Jeffery* (1915), 85 Wash. 155, 147 Pac. 877; *Hardman v. Younkers* (1942), 15 Wn. (2d) 483, 131 P. (2d) 177, 151 A. L. R. 868; *Nopson v. Wockner* (1952), 40 Wn. (2d) 645, 245 P. (2d) 1022.

The trial court concluded that the plaintiffs had not sustained that burden and, at least as to the original fire, *i. e.*, the range fire, we cannot say that the evidence preponderates against the finding that negligence was not established.

The cause of the ceiling fire having been definitely established by the plaintiffs' own witnesses, the doctrine of *res ipsa loquitur* has no application thereto. *Kemalyan v. Henderson* (1954), 45 Wn. (2d) 693, 277 P. (2d) 372; *Vogreg v. Shepard Ambulance Co., supra.* As we have indicated, the cause was heat radiated from the galvanized iron ventilating duct to the combustible wooden studding between the false ceiling of the cocktail lounge and the true ceiling, which caused the studding to ignite. The trier of the facts had to determine whether the defendant was negligent in his placing of the ventilating duct, after being warned that an eighteen-inch clearance was required between the duct and the exposed wooden studding.

Even if we were to disagree with the trial court, which found that the defendant was not negligent in his placing of the duct, and if we were to conclude that he was negligent and that his negligence was the proximate cause of the ceiling fire, the judgment of dismissal must still be

affirmed, it being impossible to segregate the amount of damage caused by smoke from the range fire (not proved to have been caused by any negligence on the part of the defendant) and by smoke from the ceiling fire (for which we are assuming the defendant was liable). *Wappenstein v. Schrepel* (1943), 19 Wn. (2d) 371, 142 P. (2d) 897; *Wintersteen v. Semler* (1953), 197 Ore. 601, 619, 255 P. (2d) 138; *Epner v. Carol Management Corp.* (1955), 142 N. Y. S. (2d) 638.

Continuing our assumption of the defendant's liability for damage resulting from the ceiling fire, we are not here concerned with any of the theories by which joint tort-feasors or persons acting independently of each other but responsible for concurring or successive acts of negligence which are, in combination, the direct and proximate cause of a single injury to a third person, may be liable for all the resulting damage (see *Summers v. Tice* (1948), 33 Cal. (2d) 80, 199 P. (2d) 1, 5 A. L. R. (2d) 91); we are concerned with the liability of one individual for one act of negligence, and it is clear that he is responsible only for the proportion of the total smoke damage caused by his negligence.

This case is in some respects similar to. *Dunseath v. Hallauer* (1953), 41 Wn. (2d) 895, 253 P. (2d) 408, in which part of the damage to an orchard by continued cold weather occurred prior to a certain date and part thereafter, and the defendant was liable for the damage occurring subsequent to that date. The plaintiff there introduced evidence tending to segregate the amount of the damage which occurred before from that which occurred after the critical date; and we held that such evidence offered a reasonable basis for estimating the amount of damage for which the defendant was liable, and that it took the issue of damages out of the realm of guess, surmise, conjecture, and speculation. In the present case, no basis is established or suggested by which we could even guess at the damage resulting from smoke caused by the ceiling fire as distinguished from the damage caused by smoke from the range fire.

The plaintiffs not having established any liability on the part of the defendant for damage caused by smoke from the

range fire and not having established a basis for segregation of the damage caused by smoke from the ceiling fire, both actions were properly dismissed and the judgment of dismissal in each case is affirmed.

HAMLEY, C. J., MALLERY, FINLEY, and WEAVER, JJ., concur.

