61 Wn.2d 418 (1963)
379 P.2d 199
DANIEL HEDGES et al., Respondents,
v.
CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, Appellant.[*]
No. 36304.
The Supreme Court of Washington, Department One.
February 7, 1963.
Richard L. Gemson, for appellant.
Herbert H. Freise and Cashatt, Williams, Connelly & Rekofke, for respondents.
ROSELLINI, J.
The plaintiff wife, while a passenger on one of the defendant's trains and walking near the forward door of the dining car, was thrown to the floor by a violent jerk or jolt which occurred when an axle journal broke, causing a portion of the undercarriage to drop into contact with the railroad ties. In this action, she recovered damages for personal injuries which she suffered as a result of this fall.
It is the position of the defendant that its evidence showed that it was free of negligence as a matter of law. This evidence was that it was the practice of the company to comply with the rules and regulations contained in the Wheel and Axle Manual of the Association of American Railroads, and that, in accordance with these rules, it had inspected the axle in question some 7 months before the *419 accident. The inspection involved removal of the wheels and axle from the car and dismantling of them, inasmuch as the journal was covered by a housing.
[1] The defendant cites cases from other jurisdictions in which courts have held that a carrier discharges its duty of care if it takes the precautions prescribed by the uniform practice of those engaged in like or similar business activities. In this jurisdiction, however, we have held that, while evidence of custom is admissible as bearing on the question of due care, it is for the jury to decide whether the conduct of the defendant was negligent under the circumstances. American Cotton Oil Co. v. Davis, 129 Wash. 24, 224 Pac. 23; Williams v. Spokane Falls & N.R. Co., 39 Wash. 77, 80 Pac. 1100.
Evidence given by the plaintiffs' experts tended to show that the break in the axle, which resulted from pitting of the metal, which in turn was caused by corrosion, could have been discovered had the axle been dismantled and examined within 60 to 90 days prior to the accident. The cost of such an inspection, the evidence showed, would be $200 per car, which means that, if undertaken five times a year, the inspection expense per car would be $1,000. There was no testimony regarding the number of cars owned by the defendant, or what impact the expense of such inspections would have on the operation of the business, except that an engineer employed by the defendant said that it would be prohibitive. The defendant contends that it is self-evident that such inspections would not be consistent with the practical operation of the business, particularly in view of the fact that accidents of this type had very rarely occurred.
It is well settled that a common carrier of passengers owes the duty to exercise the highest degree of care consistent with the practical operation of its business; and where injury to a passenger occurs through some conveyance or apparatus of the carrier, in the absence of other showing, it must be assumed to have been due to negligence of its employees imputable to the employer. Bradley v. Seattle, 160 Wash. 100, 294 Pac. 554; Walters v. Seattle, Renton *420 & Southern R. Co., 48 Wash. 233, 93 Pac. 419; Firebaugh v. Seattle Elec. Co., 40 Wash. 658, 82 Pac. 995.
We may assume, without deciding, that the defendant is correct in its contention that the danger of a break in an axle is not great enough to warrant the expenditures necessary to make the inspections which would be required if every defective condition is to be discovered in time to prevent such a break. However, as the plaintiffs point out, the verdict can be sustained on another ground. Bearing in mind that the burden is on the defendant to show that the accident happened without negligence on its part, we must observe that the mere fact that the defendant made adequate inspections for defects in its equipment does not absolve it from liability.
The undisputed evidence was that the corrosion which produced the pitting, which developed into the final break, would not have occurred in the absence of faulty maintenance. It was caused by moisture in the housing. This moisture was present because the housing was inadequately sealed. The fact that no corrosion appeared on the other end of the axle, which was exposed to more or less the same amount of moisture, confirmed this judgment of the plaintiffs' expert witness. The defendant offered no exculpatory explanation for the presence of moisture in the housing. In short, it failed to overcome the presumption that its employees were guilty of negligence in maintaining the axle housing.
If there was error, therefore, in submitting to the jury the question of negligence as it pertained to the defendant's duty to inspect, that error was harmless. We must hold, as a matter of law, that the defendant failed to overcome the presumption of negligence on its part.
The judgment is affirmed.
FINLEY, J., concurs.
HILL, J. (concurring specially)
I find myself in disagreement with the basis on which the majority decide this case.
*421 The majority rely on faulty maintenance. The reasoning is that corrosion, which produced the pitting which caused the axle to break, was caused by moisture in the housing. The moisture was there because the housing was inadequately sealed. This, the majority say, raised a presumption of negligence that the defendant's employees were guilty of negligence in maintaining the axle housing; and, it is said, that we must hold, as a matter of law, that the defendant failed to overcome that presumption of negligence.
It seems to me that the majority has confused the situation by attempting to rely on a specific act of negligence in a res ipsa loquitur case and then to apply the res ipsa loquitur rule. (I should add that I do not agree that the rule is as stated.)
It is hornbook law that a plaintiff may rely both on res ipsa loquitur and on a claimed act or acts of negligence in support of his right to recover. Vogreg v. Shepard Ambulance Ser. (1955), 47 Wn. (2d) 659, 289 P. (2d) 350; Kemalyan v. Henderson (1954), 45 Wn. (2d) 693, 706, 277 P. (2d) 372; Morner v. Union Pac. R. Co. (1948), 31 Wn. (2d) 282, 196 P. (2d) 744. In the Kemalyan case it is said:
"We have on a number of occasions held that a plaintiff can allege and attempt to prove specific acts of negligence on the part of defendant and still rely on res ipsa loquitur, and especially so when the allegation of specific acts of negligence is coupled with a general allegation of negligence on defendant's part. Covey v. Western Tank Lines, supra; Morner v. Union Pac. R. Co., supra; Mahlum v. Seattle School Dist. No. 1, supra; Case v. Peterson, supra, and Highland v. Wilsonian Inv. Co., 171 Wash. 34, 17 P. (2d) 631. This rule is subject to the qualification (already mentioned) that if plaintiff's evidence goes so far as to fully explain the cause or causes of the accident which injured him, he loses the right to rely on res ipsa, but an unsuccessful attempt to prove specific acts of negligence on the part of defendant does not deprive plaintiff of his right to rely on res ipsa. Covey v. Western Tank Lines, supra."
It is clear, however, that if a specific act or omission is established as the sole proximate cause of the event which occasioned the plaintiff's injuries, it ceases to be a res ipsa case, and the issue is: Did the act or the omission constitute *422 negligence. Hufford v. Cicovich (1955), 47 Wn. (2d) 905, 909, 290 P. (2d) 709, Vogreg v. Shepard Ambulance Ser., supra; Kemalyan v. Henderson, supra; Morner v. Union Pac. R. Co., supra.
I shall discuss the majority opinion both from the standpoint of reliance on a specific act or omission, and from the standpoint of res ipsa loquitur.
A SPECIFIC ACT OR OMISSION: If the negligence (faulty maintenance, i.e., the failure to adequately seal the housing) was conclusively established and it was further conclusively established to be the proximate cause of the breaking of the axle, the court should say so, and there is no necessity to talk about a presumption of negligence. In that event, liability being established, the only issue that should have been presented to the jury was the amount of damages. While I agree that on this basis the judgment could be affirmed, I do not believe that either the negligence or the proximate cause was conclusively established.
If (a) whether the housing was adequately sealed, or (b) whether such failure to adequately seal the housing was a proximate cause of the accident, were jury questions, then the issues of negligence and proximate cause should have been submitted to the jury under proper instructions. As I read the instructions, the case was never presented to the jury on these issues, nor was there any request that it be so presented.
RES IPSA LOQUITUR: If this is a res ipsa case, and went to the jury because a permissible inference of negligence could be drawn from the circumstances surrounding the breaking of the axle (which would include the presence of moisture in the housing), the so-called "presumption of negligence" of which the majority opinion speaks (using the language of our earlier cases[1]) is, as stated in our later *423 cases, a permissible inference of negligence. Chase v. Beard (1959), 55 Wn. (2d) 58, 346 P. (2d) 315.
Such an inference of negligence will support a verdict for the plaintiff, but does not, except under exceptional circumstances,[2] require one.
If the majority are saying here that the inference of negligence is so strong in this case that the jury (i.e., all reasonable minds) must find for the plaintiff, I would disagree because I see no more than a jury question.
With all of my disagreement with the theory and reasoning of the majority, I arrive at the same conclusion.
As I see it, this is a res ipsa loquitur case. All of the circumstances (including the presence of moisture in the housing) raised an inference of negligence which was the proximate cause of the breaking of the axle, and carried this case to the jury.
The appellant chose to introduce evidence concerning its inspection procedures in an effort to meet that inference and to establish that it exercised all the care compatible with the practical operation of its business.
On this appeal the appellant argues that it established, as a matter of law, that it exercised the highest degree of care compatible with the practical operation of its business. This argument is in two parts:
One: It argues that it complied with all of the precautions prescribed by the uniform practice of those engaged in like or similar business activities. This the majority opinion meets squarely by showing that in this jurisdiction such uniform practices are admissible in evidence on the issue of negligence, but are not conclusive of the proposition that there was no negligence.
Two: It argues that the cost of inspection of such frequency as would prevent an event such as the breaking *424 of the axle, which occurred here, would be so prohibitive as to be incompatible with the practical operation of its business. It is this latter proposition that the majority assumes, without deciding.
I would decide it, saying that the evidence is not sufficiently conclusive under all the circumstances (which includes the moisture in the housing) to make it possible to say, as a matter of law, that the defendant exercised the highest degree of care consistent with the practical operation of its business. Whether it did, or did not, was a jury question; and, under an instruction quite favorable to the defendant,[3] the jury must have found that the defendant did not exercise the highest degree of care consistent with the practical operation of its business; and, therefore, I would affirm the judgment.
WEAVER, J., concurs with HILL, J.
March 27, 1963. Petition for rehearing denied.
NOTES
[*] Reported in 379 P. (2d) 199.
[1] It is conceded that the cases cited by the majority (all prior to 1932) speak of a "presumption of negligence"; and that a small minority of state courts and some authorities including Prosser (see 37 Cal. L. Rev. 183) take the position that in carrier-passenger cases, the burden should be on the carrier to prove that there was no negligence when a passenger is injured.

My view is that we should continue, with most courts and authorities, to take the position that res ipsa loquitur principles should apply to such cases; or, if we are to abandon them, clearly state that we are doing so and why.
[2] Such a circumstance would be a collision by trains of a carrier upon tracks under its exclusive control; in short, where absent any explanation by the defendant, reasonable minds cannot reach any conclusion but that the defendant must have been negligent.
[3] "Under the law of this state, a railroad, in the maintenance and operation of its equipment, is required to exercise the highest degree of care consistent with the practical operation of its business. As such, it is required to inspect its equipment for defects, and if it neglects this duty it is liable for injuries to passengers resulting from such defects which reasonably could have been discovered by such inspection. However, a railroad will not be liable for injuries arising from hidden defects in its equipment which could not be discovered in the exercise of that degree of care required of it as I have previously defined it to you.

"Therefore, if you find from the evidence that the axle failure of the Milwaukee dining car occurred because of defects in the axle which could not have been discovered by the Milwaukee in the exercise of that standard of care the law imposes upon it, then your verdict must be for the defendant." (Instruction No. 5)