[No. 37078-2-I.   Division One.   January 27, 1997.]

CHERYL TINDER, *Appellant,* v. NORDSTROM, INC.,
*Respondent.*

*Roy G. Brewer,* for appellant.

*D. Michael Reilly, Todd L. Nunn,* and *Lane Powell Spears Lubersky,* for respondent.

BAKER, C.J. — The doctrine of res ipsa loquitur is applied in exceptional cases, when supported by the facts of the case and the demands of justice. Res ipsa loquitur is a method of proof, not a separate and additional form of negligence. A plaintiff that successfully establishes the elements of res ipsa loquitur is entitled to an inference of negligence. Because such a plaintiff is, in effect, spared the necessity of establishing a complete prima facie case of negligence against the defendant, the doctrine is to be used sparingly.

Cheryl Tinder has failed to allege or prove facts warranting application of res ipsa loquitur against Nordstrom,

Inc. We affirm summary judgment dismissal of Tinder's personal injury claim against Nordstrom.

## FACTS

Tinder was shopping at Nordstrom with her two daughters, ages four and seven. She bought a considerable number of items, enough to be "loaded" with packages. Tinder boarded the down escalator with her hands full of packages, her youngest daughter ahead of her, the older behind. Tinder was not holding the handrail when the escalator came to a sudden stop.

Apart from the sudden stop, nothing indicated that something was wrong with the escalator. Prior to the stop, her youngest daughter got off the escalator and looked up at Tinder, waiting for her to come down. Tinder's alleged injuries occurred when she reached across with her right hand and grabbed the opposite handrail to stop herself from falling.

A regular maintenance examination was performed on the escalator six days before the incident. After the incident, a maintenance specialist examined the escalator and did not find any malfunctions.

Warning signs are placed at the top of all the escalators at Nordstrom, including the one Tinder was riding. The signs warn customers to "attend to children" and to "hold handrails." Tinder does not specifically recall seeing the warning sign at the top of the escalator; however, she knew from experience that escalator riders are warned to hold the handrail and to watch their children. At the bottom of the escalator there is an emergency switch that stops the escalator.

## I

In a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue

of material fact.[1] If the moving party is a defendant, this burden may be met by pointing out that there is an absence of evidence in support of the nonmoving party's case.[2] If this initial showing is met, then the plaintiff must present evidence sufficient to raise a material question of fact regarding the essential elements of its claim.[3] This court reviews an order of summary judgment de novo, considering the facts in the light most favorable to the nonmoving party.[4]

Nordstrom, as the moving party, introduced evidence that it was not negligent; evidence establishing regular maintenance of the escalator, as well as the service report made after the incident that found no malfunction. Nordstrom therefore met its burden of pointing to an absence of evidence in support of Tinder's case, and the burden shifted to Tinder to make a prima facie showing of the essential elements of her negligence claim.[5]

## II

■■ Tinder argues that she is entitled to the inference of negligence established by res ipsa loquitur. Whether res ipsa loquitur is applicable is a question of law.[6] The doctrine recognizes that an injurious occurrence may be of such a nature "that the occurrence is of itself sufficient to establish prima facie the fact of negligence on the part of the defendant, without further or direct proof thereof."[7]

■■ In deciding whether the doctrine applies, the court

---

[1]*Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

[2]*Young*, 112 Wn.2d at 225 n.1 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

[3]*Young*, 112 Wn.2d at 225.

[4]*Young*, 112 Wn.2d at 225-26.

[5]*Young*, 112 Wn.2d at 225 and n.1.

[6]*Zukowsky v. Brown*, 79 Wn.2d 586, 592, 488 P.2d 269 (1971); *see also Marshall v. Western Air Lines, Inc.*, 62 Wn. App. 251, 259, 813 P.2d 1269, *review denied*, 118 Wn.2d 1002 (1991).

[7]*Morner v. Union Pac. R.R. Co.*, 31 Wn.2d 282, 291, 196 P.2d 744 (1948).

is to examine whether a "reasonable inference of negligence" exists.[8] Whether or not the circumstances of an occurrence are sufficient to support this "reasonable inference of negligence" can only be determined in the context of each case.[9] For the doctrine to apply, it must be established that:

> (1) the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff. [10]

If the elements of res ipsa loquitur are not satisfied, no presumption of negligence can be maintained.[11] Res ipsa loquitur is ordinarily sparingly applied, "in peculiar and exceptional cases, and only where the facts and the demands of justice make its application essential."[12]

■ The first element of the res ipsa loquitur formulation is met if, in the abstract, there is a "reasonable probability" that the incident would not have occurred in the absence of negligence.[13] The mere occurrence of an ac-

---

[8]*Marshall*, 62 Wn. App. at 259 (citing W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS, *Res Ipsa Loquitor* § 40, at 261 (5th ed. 1984)).

[9]*Zukowsky*, 79 Wn.2d at 594; *Nopson v. City of Seattle*, 33 Wn.2d 772, 785, 207 P.2d 674 (1949) ("Whether or not the doctrine is applicable in a specific instance depends upon the peculiar facts and circumstances of the individual case.") (quoting *McClellan v. Schwartz*, 97 Wash. 417, 420-21, 166 P. 783 (1917)).

[10]*Zukowsky*, 79 Wn.2d at 593 (quoting *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, 62 Wn.2d 351, 359, 382 P.2d 518 (1963)).

[11]*Hughes v. King County*, 42 Wn. App. 776, 784, 714 P.2d 316, *review denied*, 106 Wn.2d 1006 (1986); *see Swanson v. Brigham*, 18 Wn. App. 647, 650, 571 P.2d 217 (1977) (trial court warranted in holding that the doctrine did not apply in the absence of one of the necessary elements).

[12]*Morner*, 31 Wn.2d at 293.

[13]*Marshall*, 62 Wn. App. at 259 (quoting *Calabretta v. National Airlines, Inc.*, 528 F. Supp. 32, 35 (E.D.N.Y. 1981) (concluding that ear damage associated with an airplane flight ordinarily does not occur absent negligence).

cident and an injury does not necessarily infer negligence.[14]

The courts have described three types of situations which do not normally occur absent negligence: "(1) the act causing injury is palpably negligent, such as leaving foreign objects in a patient; (2) when general experience teaches that the result would not be expected without negligence; (3) when proof by experts in an exotic field creates an inference that negligence caused the injuries."[15]

While Tinder was riding the escalator it stopped suddenly and abruptly, without any noises or motions that would indicate an obvious malfunction. Nordstrom provided for regular maintenance of the escalator, and it had been recently serviced. Mechanical devices, like escalators and elevators, can wear out or break without negligence.[16] Examination of the escalator the day after the sudden stop revealed no evidence of a malfunction, and the stop remains an unexplained event.

The sudden stop of the escalator in this case was not the type of unusual situation which normally does not occur in the absence of negligence. There was no palpably negligent act, common experience does not suggest that

[14]Las v. Yellow Front Stores, Inc., 66 Wn. App. 196, 201-02, 831 P.2d 744 (1992).

[15]Hughes, 42 Wn. App. at 783.

[16]See Adams v. Western Host, Inc., 55 Wn. App. 601, 606, 779 P.2d 281 (1989). In Adams the plaintiff was injured when stepping from an elevator that had misleveled. The elevator had received regular maintenance. Adams, 55 Wn. App. at 603-04. The elevator serviceman stated that the sole cause of the misleveling was a broken shunt, and that there is no way to anticipate when metal fatigue will cause such a break. Adams, 55 Wn. App. at 603. In opposition to the elevator company's motion for summary judgment, the plaintiff submitted the declaration of an electrical engineer to the effect that the most likely reasons for an elevator to mislevel are preventable by proper maintenance. Adams, 55 Wn. App. at 604. The court concluded "[t]his is not a case of an unexplained accident of the type where res ipsa loquitur has been applied." The court continued: "This is not a case where the malfunction is so unusual that we can say it does not ordinarily occur in the absence of negligence. Elevators are mechanical devices of some complexity. Materials can wear out or break without negligence being involved." Adams, 55 Wn. App. at 606. The court held that res ipsa loquitur was not applicable. Adams, 55 Wn. App. at 606. In Adams the court relied on the fact that the elevator company had produced substantial evidence to explain how the misleveling occurred without negligence on its part. Adams, 55 Wn. App. at 607.

escalators only make sudden stops when there has been negligence, and there was no expert testimony offered to establish the inference that negligence caused Tinder's injuries.[17] The evidence presented is insufficient to establish the first element necessary for the application of res ipsa loquitur.

In *Otis Elevator Co. v. Chambliss*[18] a Florida court concluded that the plaintiff totally failed to carry its burden of showing by appropriate evidence that negligence was the probable cause of an escalator's sudden stop.[19] Defense witnesses testified that "several factors, none of which implicated negligent maintenance, can cause the escalator to stop during normal operations."[20] One factor considered by the court was the presence of safety switches that could manually be operated to shut down the escalator in emergencies.[21] Since factors other than Nordstrom's negligence could have caused the escalator to suddenly stop, res ipsa loquitur does not apply.

To conclude that the sudden, unexplained stop of an escalator is the type of occurrence that does not ordinarily occur in the absence of negligence, and to permit an inference of negligence based on such an event, would in effect make Nordstrom the insurer of all who use the escalator.[22] We decline to adopt such a rule.

---

[17]*See Hughes*, 42 Wn. App. at 783.

[18]511 So. 2d 412 (Fla. App. 1987).

[19]*Otis Elevator*, 511 So. 2d at 414. *But cf. Barretta v. Otis Elevator Co.*, 41 Conn. App. 856, 677 A.2d 979, 981, *review granted*, 682 A.2d 997 (1996) ("Ordinarily, an escalator does not suddenly stop while people are riding on it unless someone has been negligent.").

[20]*Otis Elevator*, 511 So. 2d at 413.

[21]*Otis Elevator*, 511 So. 2d at 413.

[22]*See Brown v. Crescent Stores, Inc.*, 54 Wn. App. 861, 866, 776 P.2d 705 (1989) ("Were we to apply the doctrine here, operating elevators without creating an inference of negligence would be impossible."); *see also Ellis v. Sears Roebuck & Co.*, 193 Ga. App. 797, 388 S.E.2d 920, 921 (1989) (finding that because mechanical devices, like escalators, sometimes get out of working order without negligence on the part of anyone, the trial court properly directed a verdict in favor of the defendant escalator company).

We turn now to a discussion of the second and third elements of res ipsa loquitur. In *Marshall* the court noted that with the advent of comparative fault, the third element, the absence of the plaintiff's contribution in causing the accident, is generally merged into the second element, the defendant's exclusive control over the instrumentality causing the injury.[23] These elements are therefore analyzed together.

The inference of negligence gained by res ipsa loquitur must be such that the defendant would be responsible for any negligence connected with it.[24] Exclusive control does not mean actual physical control, but rather refers to the responsibility for the proper and efficient functioning of the instrumentality that caused the injury.[25] However, exclusive control is not established merely by showing that the defendant has a superior ability to investigate and possibly determine causation.

The facts do not justify an inference of negligence against Nordstrom. Nordstrom is not an insurer of the safety of its customers who choose to ride an escalator under circumstances similar to the facts of this case. Tinder is not entitled to the inference of negligence that is provided by the application of res ipsa loquitur.

## III

In her complaint, Tinder claimed negligence against Nordstrom based on the following theories: (1) the duty owed by a business to its invitees, (2) the duty owed as

---

[23]*Marshall*, 62 Wn. App. at 261. Prosser and Keeton claim that the advent of comparative fault should logically eliminate the element of the absence of the plaintiff's contribution to the accident from the doctrine, unless the plaintiff's negligence appears to be the sole proximate cause of the event. W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS, *Res Ipsa Loquitur* § 39, at 254 (5th ed. 1984).

[24]*See Zukowsky*, 79 Wn.2d at 595.

[25]*United Mut. Sav. Bank v. Riebli*, 55 Wn.2d 816, 821, 350 P.2d 651 (1960). Nordstrom does not argue that the element of exclusive control is absent because it contracted with another company for the maintenance of the escalator, as Tinder claims.

operator of an escalator, a common carrier, and (3) general negligence. Tinder alleges that Nordstrom was negligent in either selling her more goods than she could safely manage on the escalator, or in not assisting her when she could not manage the escalator because of the number of her purchases.

Tinder argues that an escalator owner/operator cannot ignore the unique circumstances of escalator users in fulfilling its nondelegable duty to its passengers. A common carrier owes the highest degree of care to its passengers, "commensurate with the practical operation of its conveyance at the time and place in question"[26] and "consistent with the practical operation of its business."[27] This standard of care has been applied to escalator operators.[28] This duty, however, does not make a common carrier an insurer of its passengers' safety.[29]

Tinder argues that a store's duty as a common carrier is commensurate with knowledge of its customers' age, size and physical conditions.[30] In *Brown* a group of elderly women had regularly attended luncheons at the

---

[26]*Houck v. University of Wash.*, 60 Wn. App. 189, 194, 803 P.2d 47, *review denied*, 116 Wn.2d 1028 (1991) (elevator).

[27]*Rathvon v. Columbia Pac. Airlines*, 30 Wn. App. 193, 202, 633 P.2d 122 (1981), *review denied*, 96 Wn.2d 1025 (1982) (airplane).

[28]*See Dabroe v. Rhodes Co*, 64 Wn.2d 431, 433, 392 P.2d 317 (1964).

[29]*Rathvon*, 30 Wn. App. at 202 (citing *Kaiser v. Suburban Transp. Sys.*, 65 Wn.2d. 461, 468, 398 P.2d 14, 401 P.2d 350 (1965)). Tinder's argument that lack of actual knowledge of the passenger's condition does not relieve a common carrier from liability also fails for this same reason. Tinder notes that: "While such an actual knowledge requirement may be understandable in a situation involving attended common carrier facilities, it cannot apply to unattended, self-service facilities." *Houck*, 60 Wn. App. at 197-98. *Houck* involved injuries sustained when an intoxicated college student fell after jumping from an elevator that stopped between floors. *Houck*, 60 Wn. App. at 191. Nordstrom had a duty to use "the highest degree of care consistent with the practical operation of its escalator." *Houck*, 60 Wn. App. at 196 (citing *Dabroe*, 64 Wn.2d at 434-35). Extending this duty to overloaded customers who know the potential hazards of riding escalators without holding the handrail would be to establish Nordstrom as an insurer of all similarly situated customers who choose to ride the escalator. The common carrier duty does not extend that far. *See Rathvon*, 30 Wn. App. at 202.

[30]*See Brown*, 54 Wn. App. at 868.

store for approximately six years.[31] Brown presented evidence of prior accident reports made to the store involving elderly passengers in its elevators.[32] The court found that these facts raised a question of whether the store should have reasonably anticipated that an accident might occur, and whether it was therefore obligated to take precautionary measures.[33]

*Brown* is distinguishable, and does not support Tinder's argument. Tinder has not established that a prior history exists creating a duty on the part of Nordstrom to anticipate accidents like that which Tinder alleges caused her injuries.[34] Furthermore, Nordstrom took precautionary measures by posting warning signs for escalator use, providing for regular maintenance and providing an alternate means of travel through the store via elevators. The high degree of care Nordstrom owes to customers using its escalators does not extend as far as alleged by Tinder.[35]

We decline to hold that the question of Nordstrom's

---

[31]*Brown*, 54 Wn. App. at 863.

[32]*Brown*, 54 Wn. App. at 868-69.

[33]*Brown*, 54 Wn. App. at 869.

[34]The record contains the declaration of a Nordstrom employee who worked major sales events for a few years at both the downtown and Northgate stores. She remembered the escalators not working on more than a couple of occasions. This evidence simply does not equate the relevance of the accident reports relied on by the *Brown* court. Furthermore, as pointed out by Nordstrom at oral argument, physical conditions, such as being elderly or intoxicated, are readily distinguishable from a temporary, self-controlled condition such as being overloaded with packages while shopping.

[35]Tinder also argues that in common carrier operation, if an extraordinary event occurs, a presumption of liability exists, and that summary judgment was improper because Nordstrom did not meet its initial burden to rebut this presumption. *See Hedges v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 61 Wn.2d 418, 379 P.2d 199 (1963) (supporting a presumption of negligence against defendant train company). This argument is faulty, and appears to confuse the application of common carrier liability with res ipsa loquitur. Furthermore, this court has held, in an airplane case, that no such presumption of liability exists against common carriers. The court cited with approval 8 Am. Jur. 2d, *Aviation* § 118, at 747-48 (1963): "Apart from the doctrine of res ipsa loquitur, negligence will not be presumed or inferred from the mere occurrence of an airplane accident, or from the fact of injury, and this principle is not altered by the fact that the defendant is a common carrier of passengers. The mere fact of a plane

duty in this case presents a question of fact. Because Tinder failed to make out a prima facie case of negligence against Nordstrom by alleging specific, nonconclusory facts, summary judgment was proper.[36]

Affirmed.

COLEMAN and BECKER, JJ., concur.

accident or of injury to a passenger is not sufficient to raise a presumption that the carrier was negligent." *Rathvon*, 30 Wn. App. at 204. *Rathvon* calls into question the precedential value of *Hedges. See Rathvon*, 30 Wn. App. at 202-04.

[36]*See Adams*, 55 Wn. App. at 607. We conclude that there is no specific factual support for Tinder's argument that without negligence on the part of Nordstrom, her injuries would not have occurred. This explains why Tinder's case necessarily boils down to an argument that res ipsa loquitur should apply. Because we hold that the doctrine does not apply under these facts, the trial court did not err in summarily dismissing her personal injury claim against Nordstrom.