

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MICHAEL CLARKE, an individual, | ) | |
| | ) | No. 35477-6-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAY NICHOLS and MARGARET | ) | UNPUBLISHED OPINION |
| NICHOLS, husband and wife; | ) | |
| VERONICA NICHOLS, an individual; | ) | |
| and VICKI LANE, an individual, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, J. — Michael Clarke appeals the summary judgment dismissal of his claim for negligence arising from his fall while helping a friend attach trim to a soffit. He posits duties that might have been breached but presented the trial court with no evidence creating a genuine issue of material fact on the essential element of proximate cause. For that reason, and because the facts do not support the application of res ipsa loquitur, his complaint was properly dismissed. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Because Michael Clarke's complaint was dismissed by summary judgment, we view the facts in the light most favorable to him as the nonmoving party.

One day in spring 2013, Jay Nichols invited Mr. Clarke, a lifelong friend, to visit Nichols's property in Elk. Mr. Nichols co-owns the property with his wife, Margaret, and his sisters Veronica Nichols and Vicki Lane. None of the owners lives at the property, which is hilly and heavily wooded. The property has not been developed except for a few shack-like outbuildings and what Mr. Clarke describes as a "really nice fire pit." Clerk's Papers (CP) at 24. Before the spring 2013 invitation to the property, Mr. Clarke had visited Mr. Nichols there at least 10 times, where they would build a fire and "sit around and yak." *Id.*

On the day at issue, Mr. Nichols asked Mr. Clarke to help attach a piece of trim to the soffit of a shack that he had been finishing with siding. Mr. Clarke knew how to affix trim because he "used to do that for a living." CP at 26.

Mr. Nichols had already set up two ladders that the men could use to perform the task. Both ladders were six-foot, A-frame stepladders, and were set up roughly six feet apart. The ladder Mr. Clarke used was made out of wood. The piece of trim was about six feet long, and weighed about a pound. Mr. Clarke and Mr. Nichols did not discuss in advance how they would affix the trim. When he was later deposed, Mr. Clarke testified that he assumed he would hold one end of the trim in place while Mr. Nichols held the other end and used nails to affix the trim.

As Mr. Clarke began ascending one of the ladders, Mr. Nichols held it. Mr. Clarke did not ask Mr. Nichols to hold the ladder, and he did not expect Mr. Nichols to

2

continue holding it. As he ascended the ladder, it felt steady to Mr. Clarke. Yet the next thing Mr. Clarke remembers is that he was on the ground, his feet above his head, and his vision was blurry. Mr. Clarke does not know if the ladder fell or broke. He never saw it after his fall.

Mr. Nichols drove Mr. Clarke to the hospital. He had suffered extensive injuries, including a punctured lung, torn spleen, multiple broken ribs, internal bleeding, loss of vision, and severe joint damage to his left shoulder, left knee, and right ankle. When Mr. Nichols visited him in the hospital a day or two after the fall, Mr. Clarke asked him what happened and Mr. Nichols said he did not know; he had turned his back and the next thing he knew, Mr. Clarke was on the ground. Mr. Clarke does not believe that Mr. Nichols or anyone else did anything to cause his fall.

Almost three years after the accident, Mr. Clarke filed the action below, naming as defendants not only Mr. Nichols, but also his wife and sisters. By the time Mr. Nichols was deposed in March 2017, he no longer had the ladder that Mr. Clarke fell from. It had been stolen from the Elk property; Mr. Nichols does not remember when.

When deposed, Mr. Nichols stated that the ladder Mr. Clarke fell from was set on fairly level, packed dirt next to the shack. The ladder was placed directly on the ground and did not have slip resistant feet. Mr. Nichols does not remember if he braced the ladder to prevent it from moving. He does not remember if he inspected the ladder before setting it up. He does not know when, prior to Mr. Clarke's fall, he had last used

the ladder, or how old it was. He has owned several ladders and inspects them only when he has not used the ladders in a while.

Mr. Nichols was unable to recall whether, as Mr. Clarke ascended the ladder, Mr. Clarke was holding the trim or if it was laying on top of the ladder. He does recall that as Mr. Clarke ascended the ladder, he stood and held the ladder to keep it steady.

After Mr. Nichols and Mr. Clarke had been deposed, Mr. Nichols and Margaret and Veronica Nichols moved for summary judgment. They argued that summary judgment was appropriate because Mr. Clarke failed to present evidence of proximate cause. Veronica Nichols made the further argument that she was not even present.

Mr. Clarke argued that the doctrine of res ipsa loquitur was available on the facts, stating in a declaration filed with the court that he "had extensive experience working with and on ladders . . . and [has] descended ladders hundreds of times without ever falling, or even coming close to falling from a ladder." CP at 94. He also identified the following 11 facts that he argued would allow a reasonable juror to infer breach and proximate cause:

      a. Jay did not inspect the ladder before Clarke's use;
      b. The ladder was set directly upon 'fairly level' soil and not a level support surface;
      c. The ladder was not braced in any manner to prevent accidental displacement;
      d. The feet of the ladder were not slip resistant;
      e. Jay did not know the age of the ladder or when it was last used;
      f. Jay did not know the maximum weight capacity of the ladder;
      g. Jay did not inspect the side rails to ensure they were straight;

> h. Jay cannot state whether the ladder was fully open;
> i. Jay cannot state whether Clarke had finished climbing before he let go of the ladder;
> j. Jay did not warn Clarke that he was about to let go of the ladder; and
> k. Clarke had extensive experience with ladders and would not likely have fallen but for the ladder being unsteady.

CP at 134.

The trial court granted summary judgment. Mr. Clarke appeals.

ANALYSIS

Mr. Clarke argues that the trial court erred when it dismissed his claims because the 11 facts he identified to the court would allow a reasonable juror to find both negligence and proximate cause, and alternatively, liability could be based on the doctrine of res ipsa loquitur.

*Standard of review*

We review orders granting summary judgment de novo, engaging in the same inquiry as the trial court. *Volk v. DeMeerleer*, 187 Wn.2d 241, 254, 386 P.3d 254 (2016). Summary judgment is appropriate when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). We view all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Volk*, 187 Wn.2d at 254. Summary judgment is appropriate only if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

*Mr. Clarke failed to demonstrate facts creating a genuine issue of
proximate cause, an essential element*

A negligence cause of action requires a plaintiff to establish four elements: "(1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). Proximate cause requires a reasonable connection between a defendant's act or omission and the plaintiff's injury. *Albertson v. State*, 191 Wn. App. 284, 296, 361 P.3d 808 (2015). "'Washington law recognizes two elements to proximate cause: [c]ause in fact and legal causation.'" *Lowman v. Wilbur*, 178 Wn.2d 165, 177, 309 P.3d 387 (2013) (alteration in original) (quoting *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985)).

Cause in fact, which is our concern here, "refers to the actual, 'but for,' cause of the injury, i.e., 'but for' the defendant's actions the plaintiff would not [have been] injured." *Schooley v. Pinch's Deli Market, Inc.*, 134 Wn.2d 468, 478, 951 P.2d 749 (1998). To establish cause in fact the plaintiff must show "a direct, unbroken sequence of events that link the actions of the defendant and the injury to the plaintiff." *Joyce v. Dep't of Corr.*, 155 Wn.2d 306, 322, 119 P.3d 825 (2005). Cause in fact requires "a determination of what actually occurred." *Schooley*, 134 Wn.2d at 478.

Whether a defendant's act was a cause in fact of an injury is a question generally left to the jury. *Id.* But it may become a question of law for the court if the facts, and

6

inferences from them, are plain and not subject to reasonable doubt or a difference of opinion. *Little v. Countrywood Homes, Inc.*, 132 Wn. App. 777, 780, 133 P.3d 944 (2006). It may also become a question of law if evidence is so lacking that only by speculating can the injury be linked to a defendant's acts.

Two cases relied on by the respondents are illustrative. In *Little v. Countrywood Homes*, the appellant was injured while installing gutters on a home. *Id.* at 778. Little had no memory of the accident and there were no witnesses. While he presented expert testimony that the general contractor on the project had violated safety regulations, this court held that even if the evidence was sufficient to prove breach, Little still "needed to submit evidence allowing a reasonable person to infer, without speculating, that [the general contractor's] negligence more probably than not caused the accident." *Id.* at 781-82. Because such evidence was lacking, summary judgment was appropriate. *Id.* at 784.

Similarly, in *Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 375, 377 P.2d 475 (1999), the appellant was injured while using a treadmill. She did not know how she was thrown from the treadmill. *Id.* While she offered a theory on how she was injured, this court observed that "a verdict cannot be founded on mere theory or speculation." *Id.* at 379. Summary judgment was again appropriate, because she could not present evidence that would support a finding of proximate cause. *Id.* at 379-80.

The 11 facts emphasized by Mr. Clarke are the basis for his theories about the cause of his fall. But he lacks any evidence from which a reasonable juror could find,

without speculating, that one of his 11 theories explains his fall. His effort to establish

the essential element of proximate cause fails as a matter of law.

*Res ipsa loquitur does not apply*

Mr. Clarke argues that if his evidence did not create a genuine issue of material

fact as to the defendant's negligence, the court should have recognized that the doctrine

of res ipsa loquitur could apply.

Generally, a plaintiff must affirmatively prove a defendant's negligence, it will not

be presumed. *Jackass Mt. Ranch, Inc. v. S. Columbia Basin Irr. Dist.*, 175 Wn. App. 374,

397, 305 P.3d 1108 (2013). "However, '[t]he doctrine of res ipsa loquitur spares the

plaintiff the requirement of proving specific acts of negligence in cases where a plaintiff

asserts that he or she suffered injury, the cause of which cannot be fully explained, and

the injury is of a type that would not ordinarily result if the defendant were not

negligent.'" *Id.* at 397-98 (alteration in original) (quoting *Pacheco v. Ames*, 149 Wn.2d

431, 436, 69 P.3d 324 (2003)). The doctrine "is ordinarily sparingly applied, 'in peculiar

and exceptional cases, and only where the facts and the demands of justice make its

application essential.'" *Curtis v. Lein*, 169 Wn.2d 884, 889, 239 P.3d 1078 (2010)

(quoting *Tinder v. Nordstrom, Inc.*, 84 Wn. App. 787, 792, 929 P.2d 1209 (1997)).

For res ipsa loquitur to apply, the plaintiff must show that

(1) the accident or occurrence producing the injury is of a kind which
ordinarily does not happen in the absence of someone's negligence, (2) the
injuries are caused by an agency or instrumentality within the exclusive

control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff.

*Horner v. N. Pac. Beneficial Ass'n Hosps., Inc.*, 62 Wn.2d 351, 359, 382 P.2d 518 (1963). The second and third elements of res ipsa loquitur generally merge and are analyzed together. *Tinder*, 84 Wn. App. at 795. Whether res ipsa loquitur applies is a question of law. *Curtis*, 169 Wn.2d at 889.

In *Horner*, the Washington Supreme Court identified three situations where negligence could be inferred without affirmative proof, thereby satisfying the first element of the doctrine:

> (1) When the act causing the injury is so palpably negligent that it may be inferred as a matter of law, i.e., leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries.

62 Wn.2d at 360 (emphasis omitted).

Here, the ladder was not within Mr. Nichols's exclusive control and it cannot be determined that Mr. Clarke's own action was not a cause of his fall. For those reasons alone, res ipsa loquitur does not apply.

It might be expected that a fall from a ladder will ordinarily be the result of *someone's* negligence. But it cannot be said that a fall from a ladder ordinarily does not happen in the absence of a negligent provider and placer of the ladder, which is Mr. Clarke's theory. For that further reason, the doctrine does not apply.

9

No. 35477-6-III
*Clarke v. Nichols, et al.*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_Siddoway, J._
Siddoway, J.

WE CONCUR:

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

_Pennell, J._
Pennell, J.

10