# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CHRISTINE CONNER, an individual,<br><br>　　　　　　Appellant,<br><br>　　　　v.<br><br>JEREMY MEADOWS, D.C.,<br><br>　　　　　　Respondent. | No. 78494-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: August 5, 2019 |

LEACH, J. — Christine Conner appeals the summary judgment dismissal of her negligence claim against her chiropractor, Dr. Jeremy Meadows. Because Conner did not produce expert testimony establishing that Dr. Meadows breached the standard of care, the trial court properly granted summary judgment. We affirm.

## FACTS

Conner regularly visited Dr. Meadows's chiropractic clinic for treatment of shoulder pain. At each visit, Dr. Meadows performed a procedure called a "supine thoracic adjustment," in which he adjusted Conner's shoulder while she was lying on her back. According to Conner, she typically did not feel any discomfort during this procedure. But when Dr. Meadows performed the adjustment on January 3, 2013, Conner heard a popping sound and immediately

felt pain. She attributed this to the fact that her body was not in the correct position when Dr. Meadows performed the adjustment. Conner continued to experience restricted range of motion and pain when lifting heavy objects.

Conner sued Dr. Meadows, alleging that Dr. Meadows negligently injured her shoulder during the adjustment.[1] The parties stipulated to arbitration and submitted prehearing statements of proof. Conner did not identify an expert to testify about the appropriate standard of care for a chiropractor. Instead, Conner stated that "[p]resumably, Dr. Meadows himself will establish [what] the applicable standard of care is to perform the maneuver he performed without injury to the plaintiffs shoulder."

At Dr. Meadows's request, the arbitrator continued the arbitration hearing, and Dr. Meadows moved for summary judgment. He argued that Conner did not have any expert testimony that he breached the standard of care or that his failure to comply with the standard of care caused her injuries. The trial court granted Dr. Meadows's motion. Conner appeals.

ANALYSIS

We review an order granting summary judgment de novo, considering all facts and reasonable inferences in the light most favorable to the nonmoving party.[2] Although the evidence is viewed in the light most favorable to the

---

[1] Conner also alleged that Dr. Meadows failed to obtain her informed consent for the procedure. Conner does not challenge the summary judgment dismissal of this claim.

[2] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

-2-

nonmoving party, if that party is the plaintiff and she fails to make a factual showing sufficient to establish an essential element of her claim, summary judgment is warranted.[3] Once the moving party shows there are no genuine issues of material fact, the nonmoving party must present evidence to rebut the moving party's contentions.[4] Mere allegations or conclusory statements of fact unsupported by evidence are not sufficient to establish a genuine issue of fact.[5]

Chapter 7.70 RCW governs actions for medical malpractice. The plaintiff has the burden to prove by a preponderance of the evidence the following elements: (1) that the health care provider failed to exercise the standard of care expected of a reasonably prudent health care provider and (2) that such failure was a proximate cause of the plaintiff's injury.[6]

Generally, the plaintiff must establish negligence through the testimony of experts who practice or have expertise in the relevant specialty.[7] These experts must establish that the alleged injury-producing event "probably" or "more likely than not" caused the harm based on a reasonable degree of medical certainty.[8] An exception exists when the negligence is self-evident and describable without

---

[3] Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).
[4] Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 169, 273 P.3d 965 (2012).
[5] CR 56(e); Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989).
[6] RCW 7.70.030; RCW 7.70.040.
[7] Harris v. Groth, 99 Wn.2d 438, 449, 663 P.2d 113 (1983); McKee v. Am. Home Prods. Corp., 113 Wn.2d 701, 706-07, 782 P.2d 1045 (1989).
[8] Rounds v. Nellcor Puritan Bennett, Inc., 147 Wn. App. 155, 163, 194 P.3d 274 (2008) (quoting Merriman v. Toothaker, 9 Wn. App. 810, 814, 515 P.2d 509 (1973)).

medical training. "Where the determination of negligence does not require technical medical expertise, such as the negligence of amputating the wrong limb or poking a patient in the eye while stitching a wound on the face, the cases also do not require testimony by a physician."[9]

Conner argues that the trial court erred in granting summary judgment because Dr. Meadows's own deposition testimony provided expert testimony about the standard of care and the proximate cause of her injury. The record does not support Conner's claim.

In response to the summary judgment motion, Conner submitted Dr. Meadows's deposition testimony. Dr. Meadows explained that a supine thoracic adjustment is a "standard chiropractic maneuver" that he had performed many times on Conner. Dr. Meadows testified that on January 3, Conner said, "Ow, that hurt my shoulder." He examined her shoulder and noted, "[T]here was some tightness, muscle spasm in the shoulder, which simply seemed like an exacerbation of an injury that she came to me with in the right shoulder. So sort of like a mild pulled muscle from a muscle that had been injured before." According to Dr. Meadows, Conner had occasionally complained of similar pain when he had performed the same adjustment. In response to Conner's complaint of pain, Dr. Meadows used a percussor—a vibrating device that reduces muscle spasm—on Conner's shoulder. Dr. Meadows asked Conner if she felt better, and she said that she did.

---

[9] Young, 112 Wn.2d at 228.

Dr. Meadows testified that the supine thoracic adjustment does not "carry with it any recognized risk of shoulder injury." He also denied that the adjustment could have caused Conner's injury.

> Q:     If in fact she did suffer some sort of shoulder injury during the supine thoracic maneuver, would that in your opinion be a breach of the standard of care for reasonably prudent chiropractic care?
>
> . . . .
>
> Q:     My question is whether if a supine thoracic maneuver of the type that you were performing in fact occasioned some injury to the shoulder, would you consider that to be a failure of technique or reasonable prudence?
>
> A:     I don't think it would be a failure of technique.
>
> Q:     Explain that answer for me, please.
>
> A:     I've been doing this for 17 years. I adjust thousands of people a year. I've never had somebody with an injured shoulder, even people who have had rotator cuff surgery and who are up for rotator cuff surgery be injured by that type of an adjustment.
>
> . . . .
>
> Q:     Fully understanding you do not believe that your maneuver occasioned any injury to her shoulder, if we were to assume that a chiropractor did in fact somehow injure the shoulder during the supine thoracic maneuver, would that be a failure of reasonably prudent chiropractic care?
>
> A:     No.
>
> Q:     Help me understand that, please.
>
> A:     If there is weakened tissue, then I think that's a failure of the biomechanics.

Dr. Meadows also provided the declaration of Dr. Murray Smith, a chiropractor licensed in Washington. Dr. Smith reviewed Conner's medical records and stated, "to a reasonable degree of medical certainty," that Dr. Meadows complied with the appropriate standard of care. Dr. Smith also stated that because "[n]early every patient seeks chiropractic treatment to treat pain," adjustments can result in acute pain but that this pain "does not indicate that the practitioner was negligent."

Here, Conner identifies no genuine issue of material fact about the standard of care. Dr. Smith stated that Dr. Meadows met the appropriate standard of care for a supine thoracic adjustment.[10] And Dr. Meadows denied that the adjustment could have caused Conner's injuries. Though Conner believed she was in the wrong position, expert medical testimony is required to establish the appropriate body position for a chiropractic adjustment. Conner's unsupported speculation is insufficient to establish a genuine issue of material fact. Accordingly, the trial court did not err in granting summary judgment to Dr. Meadows.

Relying on Dr. Meadows's testimony that there is no risk of injury from a supine thoracic adjustment, Conner argues that the injury must necessarily have resulted from Dr. Meadows's negligence. She contends that expert testimony

---

[10] Conner also offered the deposition testimony of Dr. Thomas Degan, an orthopedic surgeon who subsequently treated her for unrelated injuries. But Dr. Degan testified he had no chiropractic training and no experience in performing chiropractic adjustments. He acknowledged he was unable to testify as to the proper amount of force used in a thoracic adjustment and could not offer any opinion as to the standard of care.

was not necessary because the doctrine of res ipsa loquitur established a prima facie claim for negligence. This argument also fails.

A plaintiff may establish negligence by res ipsa loquitur if the evidence shows that (1) the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, (2) the injury was caused by something within the exclusive control of the defendant, and (3) the injury is not due to any voluntary action or contribution on the part of the plaintiff.[11] The first element may be satisfied in one of three ways:

> When the act causing the injury is so palpably negligent that it may be inferred as a matter of law, *i.e.,* leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries.[12]

If any of these three elements is missing, a presumption of negligence is not warranted. Res ipsa loquitur is ordinarily sparingly applied, "'in peculiar and exceptional cases, and only where the facts and the demands of justice make its application essential.'"[13] Whether the doctrine of res ipsa loquitur applies to a particular case is a question of law that we review de novo.[14]

---

[11] Reyes v. Yakima Health Dist., 191 Wn.2d 79, 89-90, 419 P.3d 819 (2018) (quoting Pacheco v. Ames, 149 Wn.2d 431, 436, 69 P.3d 324 (2003)).

[12] Horner v. N. Pac. Beneficial Ass'n Hosps., Inc., 62 Wn.2d 351, 360, 382 P.2d 518 (1963).

[13] Ripley v. Lanzer, 152 Wn. App. 296, 308, 215 P.3d 1020 (2009) (internal quotation marks omitted) (quoting Tinder v. Nordstrom, Inc., 84 Wn. App. 787, 792, 929 P.2d 1209 (1997).

[14] Pacheco, 149 Wn.2d at 436.

Here, Conner fails to establish that her shoulder pain could only have resulted from Dr. Meadows's negligence. A chiropractic procedure followed by shoulder pain is not so palpably negligent that it may be inferred as a matter of law. Nor could a layperson's general experience and observation show that it is negligent. Only expert testimony could have established that Dr. Meadows performed the adjustment in the wrong position or in an otherwise negligent manner. Conner presented no such testimony. The doctrine of res ipsa loquitur did not relieve Conner of her burden to present expert testimony.

Affirmed.

_____
Leach, J.

WE CONCUR:

_____     _____
Chun, J.                      Appelwick, C.J.